Rosenweig *v.* The People.

. [FIRST DEPARTMENT, GENERAL TERM, at New York, November 4, 1872. *Ingraham, Leonard* and *Gilbert,* Justices.]

JACOB ROSENWEIG, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

When a prisoner, on his trial, is examined as a witness in his own behalf, under the act of the legislature, of 1869, it is not competent to impeach him as a witness, nor any other witness, by contradicting him as to facts disconnected with, or collateral to, the subject matter at issue and on trial.

The plaintiff in error, on his trial for procuring an abortion upon B., after being examined as a witness in his own behalf, testified, on his cross-examination, that he did not know W., a young woman in court then pointed out to him ; that he had never seen her ; and that he had never procured an abortion upon her. W. was then sworn, and testified, (against an objection and exception,) that the prisoner had produced an abortion upon her person, about two years before. *Held* that upon well established authority the admission of this testimony of W. was an error.

*Held, also,* that the illegal evidence so admitted tended to damage the prisoner's case by inducing a conviction in the mind of the jury, from the commission of the previous offence, that he had committed the crime for which he was then on trial.

Rosenweig *v.* The People.

No person can be required to come into court, on a trial upon an indictment for a specific offence, prepared to defend or explain other transactions, not connected with the one on trial.

The admission of illegal evidence cannot be disregarded, or excused upon the ground that the other evidence in the case was sufficient to justify a conviction. The conviction must be had by legal evidence, only.

ERROR to the New York court of general sessions, to reverse a conviction for manslaughter.

The plaintiff in error was indicted under the statute, passed May 6, 1869, for manslaughter in the second degree, in causing the death of Alice Augusta Bowlsby, which death was charged to have been produced by the use and employment, by the plaintiff in error, of certain instruments upon the body of said Alice, with intent to produce a miscarriage. On the 25th of October, 1871, the indictment was brought to trial, at the court of general sessions of the peace of the city and county of New York, before the Hon. John K. Hackett, recorder, and after a trial, lasting four days, the plaintiff in error was convicted of manslaughter in the second degree, and sentenced to the State prison for the term of seven years.

The facts necessary to an understanding of the questions decided, appear in the opinion of the court.

*W. F. Howe* and *Ira Shafer*, for the plaintiff in error.

The defendant was inquired of, by the district attorney, on cross-examination, whether he had ever procured an abortion upon Nellie Willis, a woman produced in court, and he denied having done so. Then, under the defendant's counsel's objection, Nellie Willis was placed upon the stand, and she was permitted to testify that two years before the trial he performed an abortion upon her. This evidence was improperly received. 1. The denials of the defendant were conclusive upon the prosecution. 2. The people could not contradict the defendant's denials, as they related to collateral matters. 3. The evidence tended

to the multiplication of issues.    4. The evidence was highly prejudicial to the accused, and no doubt insured his conviction on the main charge.    The following authorities show that the court erred in admitting the evidence: 1 *Phil. Ev.* 960, 969 to 973, *Edw. Notes*; 1 *Greenl. Ev.* §§ 51, 52, 448–450; *Commonwealth* v. *Buzzell*, (16 *Pick.* 153, 157;) *Patchin* v. *The Astor Mutual Ins. Co.*, (3 *Kern* 268;) *Carpenter* v. *Ward*, (30 *N. Y.* 243;) *Newcomb* v. *Griswold*, (24 *id.* 299;) *Lawrence* v. *Barker*, 5 *Wend.* 301;) *Harris* v. *Wilson*, (7 *id.* 57;) *Howard* v. *City Fire Ins. Co.*, (4 *Denio*, 502;) *Stephens* v. *The People*, (19 *N. Y.* 572;) *Ross* v. *Ackerman*, (46 *id.* 210.)    5. " Where the error is in the admission of illegal evidence which bears in the least degree on the question in issue, it cannot be disregarded." (*Worrall* v. *Parmelee*, 1 *Comst.* 519, 521.)

*S. B. Garvin*, (district attorney,) for the people.

I. The objection to the question put to the prisoner as a witness, as to his having produced an abortion upon Nellie Willis, was properly overruled.    The question was put on the cross-examination of a witness for the defence.    The extent of such cross-examination is always subject only to the discretion of the court, and the exercise of that discretion is not subject to review.    (*Labeau* v. *The People*, 6 *Park.* 374, 395.    *Real* v. *The People*, 42 *N. Y.* 270.    *Newcomb* v. *Griswold*, 24 *id.* 298.    *The People* v. *Blakeley*, 4 *Park.* 176.    *Great W. Turnpike Co.* v. *Loomis*, 32 *N. Y.* 127.)

II. The court properly overruled the objection made to the evidence of the witnesses Woodward and Nellie Willis, as to the commission of previous abortions by the prisoner.    1. The character of the defendant had been made an issue in the case, and any evidence effecting that question was material, and not collateral or irrelevant.    The defence called and examined thirteen witnesses, who testified to the defendant's character. . Many of these witnesses were persons who had been patients of the defendant, and

the counsel brought out from them that he (defendant) was a "good doctor," and a man of good character. The defence attempted to establish, by these witnesses, not only that the defendant was a man of good character, but that he was a regular, reputable physician, one who associated in consultations, &c., with the most respectable medical talent in the land, and that the defendant, of all men, was the least likely to be guilty of a felonious abortion. This was one of the main elements of the defence. The defence thus sought to prove, for the prisoner, a particular credit, as distinguished from general reputation or character. 2. It must be remembered that one of these witnesses for the defence to the defendant's character was the prisoner himself. He himself, in his testimony on his direct examination, testified to facts tending to show himself to be a graduate of a respectable medical institution; a man of learning, probity and respectability. Having thus made the defendant's character a direct issue in the case, the defence now seek to prevent evidence being given by the prosecution to rebut the testimony given by themselves, on the ground that it is collateral. Woodward was called to contradict the witness, Rosenweig, as to material matters brought out on his cross-examination. They were material, because they related to a subject made so by the defence itself. And being material, the district attorney was not concluded by the witness' answer, and was at liberty to contradict him. (2 *Phil. on Ev.* 900, 901.) 3. They cannot object to testimony as irrelevant or collateral which is offered to rebut evidence on the same subject, introduced by themselves. (*See Stephens* v. *The People*, 19 *N. Y.* 573.) "To determine whether a question is relevant on a cross-examination frequently involves a nice and difficult inquiry into the nature of the issue or point in question, and the manner in which the question may be brought to bear upon it. We are to ask, would the answer, in any possible shape, or in the

slightest degree, affect any question of fact which can be raised in the cause; if it may, the inquiry is relevant." (2 *Phillips on Ev., Cowen & Hill,* 902, *note* 581. *See, also, Starks* v. *The People,* 5 *Denio,* 106; *Newton* v. *Harris,* 6 *N. Y.* 345.) The question thus presented by the defence to the jury was this: " Is this defendant a person likely to have committed this crime? Would he be likely to do it? Is it probable that a good doctor, a reputable physician, a graduate of Warsaw University, a man who has been in frequent consultation with Dr. Willard Parker and other eminent and respectable physicians; this man who has borne an unblemished character for six years in this community, would be guilty of this crime? If it is not probable, why, here, in a case where the evidence against him is circumstantial, you should acquit." And this court is called upon to say, that in a case where this issue is raised by the defence—where on cross-examination of the witness-prisoner, this defence is sought to be disproved and rebutted, by showing out of his own mouth that he had been for years the associate in business with divers professed abortionists, the people are concluded by his denial, and are not to be allowed to show the true state of the case, by contradicting him. It is only where new matter is brought out on cross-examination, and where that matter is collateral and irrelevant, that the cross-examining party is concluded. It was also competent to contradict the testimony given by the prisoner-witness, as to these material matters, with a view to attack and impeach his credibility as a witness. A prisoner, when he becomes a witness in the case, wholly divests himself of his character and position as a prisoner, and as far as his testimony is concerned is a witness merely. He can claim no privileges because he is the defendant on trial. (*See Conners* v. *The People, MS., Court of Appeals. Brandon* v. *The People,* 42 *N. Y.* 265.) If the evidence admitted, under objection, was otherwise competent, it cannot be excluded on the

Rosenweig v. The People.

ground that it tends to show, or does show, that the defendant has been guilty of other and distinct felonies. *Roscoe*, (*Crim. Ev. p.* 86,) says: "The notion that it is in itself an objection to the admission of evidence that it discloses other offences, especially where they are the subject of indictment, is now exploded. If the evidence is admissible on general grounds, it cannot be resisted on this ground." Citing *R.* v. *Salisbury*, (5 *C. & P.* 155;) *R.* v. *Clewes*, (4 *id.* 221;) *R.* v. *Richardson*, (2 *F. & F.* 343,) and numerous other cases. For authority on this point, in this country, see *Osborne* v. *The People*, (2 *Park*, 583;) *The People* v. *Wood*, (3 *id.* 681;) *Stout* v. *The People*, (4 *id.* 132;) *State* v. *Watkins*, (9 *Conn.* 47;) *Com.* v. *Heavice*, (2 *Yeates*, 144.)

*By the Court*, LEONARD, J. The defendant, Rosenweig, was indicted and tried at the general sessions of the peace of the city of New York, for producing an abortion upon Alice Augusta Bowlsby, resulting in a conviction for manslaughter in the second degree, and his sentence to the State prison for seven years. A case of probable guilt was proven against the defendant, at the close of the testimony for the prosecution, when he was sworn and testified as a witness in his own, behalf, and gave his explanation of the facts proven against him, as he was authorized to do by an act of the legislature passed in 1869. (*Laws of* 1869, *ch.* 678.) On his cross-examination by the district attorney, he testified that he did not know Nellie Willis, a young woman in court then pointed out to him; that he had never seen her in his life; and that he had never procured an abortion upon her. Nellie Willis was afterwards sworn, and testified, against an objection and exception by the prisoner's counsel, that the prisoner had produced an abortion upon her person, about two years before, by the use of instruments, at a time when she was three and a half months advanced in pregnancy.

The admission of this testimony was an error, upon well established authority. It was not competent to impeach the prisoner as a witness, nor any other witness, by contradicting him as to facts disconnected with, or collateral to, the subject matter at issue and on trial. The prisoner was not indicted for producing an abortion upon Nellie Willis, nor was he notified or prepared to meet that charge. No person can be required to come into court, on a trial under an indictment for a specific offence, prepared to defend or explain other transactions, not connected with the one on trial. There is no reason for doubting, in this particular case, that Nellie Willis testified truly; but her testimony might have been false, and having been brought out unexpectedly, the prisoner could not have been prepared for it; nor could he be expected, on the instant, to vindicate himself. He would be wholly unable to meet it, were the charge of Nellie Willis unquestionably fictitious. Evidence of general good character would not relieve the prisoner from the stigma of the crime proved by Nellie Willis, nor restore the presumption in his favor which might otherwise have been created by his own evidence. Every person is presumed to be able to defend himself against evidence of general bad character for truth, but not so as to proof of particular acts of crime or misdemeanor.

The illegal evidence so admitted tended to damage the prisoner's case, by inducing a conviction, in the mind of the jury, from the commission of the previous offence, that he had committed the crime for which he was then on trial. No one can for a moment suppose that a person charged with the crime of murder should be convicted on proof that he had committed a murder, two years before, on another person. The same principle applies to this case.

The admission of illegal evidence cannot be disregarded or excused upon the ground that the other evidence in the

---
Rosenweig *v.* The People.
---

case was sufficient to justify a conviction. The conviction must be had by legal evidence, only. There would be no safeguard for innocence, if this rule were to be disregarded. It is in the highest degree important that justice should be sure and speedy, and that when a conviction has been had for an offence fully proven, the offender should not be able to escape on technical grounds, or for reasons not involving the merits of the subject of the indictment. But it is far more important to the course of public justice, that a fair trial should be secured, and that no person should suffer by an illegal conviction. A disregard of the legal rules established for the attainment of truth, on the trial of an action in a court, is but a mockery of justice, and rapidly degenerates to the standard of Lynch law.

The judgment must be reversed, and a new trial ordered, at the general sessions.

[FIRST DEPARTMENT, GENERAL TERM, at New York, November 4, 1872, *Ingraham, Leonard* and *Gilbert,* Justices.]