(No. 13390.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LILLIAN HOBBS, Plaintiff in Error.

*Opinion filed April 21, 1921.*

1. CRIMINAL LAW—*when indictment correctly names defendant.* Where the defendant is first named in the indictment as "Lillian Hobbs, otherwise called Lillian Seymour," it is sufficient afterward throughout the indictment to name the defendant as "the said Lillian Hobbs."

2. SAME—*when an indictment sufficiently describes method of abortion.* In an indictment for murder caused by an abortion, a charge in the indictment that the abortion was caused by a certain instrument, a particular description of which is to the grand jurors unknown, by forcing, thrusting and inserting the instrument into the uterus, is a sufficient description of the method by which the abortion was performed.

3. SAME—*evidence of other offenses is not admissible where proof of intent is not required.* Where the intent is not required to be specifically proved, or from the nature of the offense under investigation proof of its commission as charged necessarily establishes the criminal intent, or the intent is a necessary conclusion from the act done, evidence of the perpetration of other like offenses should not be admitted.

4. SAME—*specific intent to kill is not necessary element of crime of murder.* Specific intent to kill does not enter into the definition of murder, and on a trial for murder it is sufficient to prove that the unlawful killing was done with malice aforethought, either express or implied, which means that it is sufficient to prove general malice as distinguished from a specific intent to kill.

5. SAME—*evidence of former murder is not admissible to show guilt in trial for murder.* In a trial for murder it is not admis-

sible, for the purpose of showing guilt, to prove a former conviction of the accused for murder or the commission of a former murder by him, no matter by what means the former murder may have been committed.

6. SAME—*in trial for murder by abortion, evidence of death resulting from another abortion is not admissible.* In a prosecution under an indictment charging murder committed by a criminal abortion, in proving the commission of an abortion upon another woman as tending to show the defendant's practice it is prejudicial error to admit evidence showing that the victim of the other offense died as a result of the abortion.

7. SAME—*when evidence of another offense is admissible to show intent—instruction.* Where the intent with which an alleged offense was committed is a material element of the crime charged and becomes an issue on the trial, proof of former similar offenses by the defendant, within certain reasonable limits, is admissible as tending to show such intent, but the court, when asked, should give instructions clearly pointing out the purpose of admitting the evidence and confine the argument to that purpose.

8. SAME—*rule as to proof of other abortions to show intent of accused.* The specific intent or purpose to produce a criminal abortion must be proved before the guilt of the accused is established, and while evidence of former similar criminal abortions by the defendant on the same or another woman is admissible upon the question of such specific intent, evidence of a subsequent abortion, without proof of former ones, has no tendency to prove intent at the time of the offense charged and is not admissible. (*People* v. *Hagenow,* 236 Ill. 514, and *Scott* v. *People,* 141 id. 195, distinguished.)

9. SAME—*prosecution must prove all elements of crime in first instance.* In its case in chief the prosecution must in the first instance prove all the elements of the crime, including the intent, where that is material, and need not wait to learn the character of the defense to be made by the defendant, as the plea of not guilty puts in issue all material allegations and any proper defense may be shown thereunder.

10. SAME—*what does not, of itself, show criminal intent.* Under the Illinois statute defining abortion, which excepts from the penalties of the act any person who produces an abortion for the necessary purpose of preserving the life of the mother, mere proof of the use of an instrument, drug or other thing for the purpose of producing an abortion does not necessarily prove the criminal intent required to make the user guilty of the crime of abortion.

11. SAME—*theory upon which proof of other abortions is admitted.* Proof of former criminal abortions committed by the defend-

ant is admitted in a trial for criminal abortion upon the theory that they create a reasonable presumption of a practice and a business of performing such criminal acts, particularly where it is shown such former acts were performed solely for a money consideration.

12. SAME—*uterus is admissible in evidence to prove how abortion was committed.* In a trial for murder as the result of an abortion by the insertion of an instrument into the uterus, although the jury have a full description of the injury by the testimony of physicians, the uterus itself is admissible in evidence to aid the jury in understanding the nature and extent of the injury and in determining how the offense was committed.

13. SAME—*when verdict is sufficient in trial for murder by abortion.* Where the charge in the indictment is murder by abortion it is not necessary that a verdict of guilty shall make the same recital, but it is sufficient if the verdict find the defendant guilty in manner and form as charged in the indictment.

14. SAME—*it is not error to omit instruction as to manslaughter in trial for murder by abortion.* In a trial for murder by abortion, where the defendant has not asked for an instruction as to manslaughter, it is not error for the court to fail to give such instruction of its own motion, as the statute makes the offense murder.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

EVERETT JENNINGS, and E. M. SEYMOUR, (CHAS. J. TRAINOR, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE and ROBERT E. CROWE, State's Attorneys, and NOAH C. BAINUM, (EDWARD E. WILSON, GROVER C. NIEMEYER, and DWIGHT McKAY, of counsel,) for the People.

Per CURIAM: Alda Christopherson, an unmarried woman 21 years old, died at the Lakeside Hospital, in Chicago, on February 25, 1916, as the result of an abortion. She was taken to the hospital in the afternoon of February 24 suffering from peritonitis, resulting from the abortion. The surgeon in charge was not able to get any statement from her as to her trouble or its history until he was informed by her sister, Kitty Christopherson, that she had

297–26

learned by telephone from John K. McDonald of the cause of the trouble, and then he decided to operate as quickly as possible. Upon making an incision in the abdomen he found blood and blood clots, an enlargement of the uterus indicating a condition which had existed two or two and one-half months, and in the fundus or upper end of the uterus an opening caused by some instrument. He was wearing rubber gloves and his thumb slipped into the hole, which was filled with placental tissue protruding through the opening. The surgeon performed such services as he could and sutured the opening, but the patient died next morning. The plaintiff in error, Lillian Hobbs, who had an office and practiced as a physician and surgeon, was indicted in the criminal court of Cook county for murder, and upon the trial there was a verdict of guilty and the punishment was fixed at imprisonment in the penitentiary for a term of fourteen years. The record has been brought to this court by writ of error.

The assignment of errors contains fifty-two specifications of alleged errors, including practically every rule of law and practice pertaining to criminal prosecutions, and they are repeated in the brief, and again in the argument, under like headings. A great many of them are stated as general rules without any particular application to the case, and such of them as have any substantial relation to the case or form any basis for argument that error was committed will be noticed.

At the trial the facts above stated were proved and not disputed, and the controversy was whether the injury was self-inflicted or caused by the defendant in an operation at her office. The principal testimony on the part of the People was by John K. McDonald, who was responsible for the condition of Alda Christopherson and who had been promised immunity from prosecution, and on the part of the defendant by her denial of any participation in the abortion, and each one was corroborated to some extent.

McDonald testified that on February 22, 1916, he went to the office of the defendant and asked her if a lady had been there the day previous to see about having an operation performed and if she had returned that morning or if the defendant had heard from her, and the defendant said that she had not returned or been heard from; that he asked the defendant if there would be any danger in having an operation performed, and she said there would not; that he said if there was danger he did not want it done, and told the defendant that he and the girl would be back there about 1:30 o'clock; that he then met Alda by appointment and went with her to the defendant's office and they entered the reception room on the first floor; that the defendant remarked about their looking worried and said there was nothing to worry about, and she told him to stay there, and she and Alda went down to the office in the basement, Alda going down the front way and the defendant the back way; that they were not gone over fifteen minutes, and when they came up he asked the defendant if she would take her money now or later; that the defendant said she would take the money now, as she usually got the money for that work in advance; that nothing was said about what the work was and he paid her $50; that the defendant said if the girl would follow instructions there would be nothing to worry about; that Alda took the street car and went home and he noticed nothing unusual about her condition, and that he went that evening to the house of Mrs. G. E. Holmes, where Alda was doing housework, and went out with her and was with her until quite late at night. The sister, Kitty Christopherson, testified that there was nothing noticeable about her sister on the 22d; that Alda went out with McDonald in the evening and she met them at a picture show and came back with them and there was no indication of anything wrong; and Nellie Christopherson, another sister, testified that Alda was in good health on the night of the 22d and seemed all right.

The defendant testified that Alda Christopherson came to her office on February 21, 1916, and said she was in trouble and started to cry and told her what the trouble was; that she asked Alda how it was that she came to her, and she replied that she wanted a woman doctor, and the defendant said that her sign did not indicate whether she was a man or woman; that Alda said she wanted a woman doctor, and said for about six weeks she had been taking dope and the Sunday before she got desperate and had used a button-hook on herself; that her legs ached and she felt sick and wanted to know if the defendant would not finish her up; that the defendant told her if she had done that she had done enough and ought to go to the hospital, which was the only way to do and she would take care of her; that Alda would not tell her name or address, and the defendant told her to go home, take quinine and a hot bath, and gave her permission to come back the next day; that McDonald came the next day about noon and asked her if the girl had called her up and made arrangements, and she told him no; that he asked her if she thought an operation was safe, and she said it was for anything she knew,—that she knew many cases that had come out all right and did not know of any danger,—but he said if this was not going to be safe he did not want anything to happen to Alda; that they might be married but it was rather inconvenient; that he came back with Alda before two o'clock and asked the defendant to do something for her and that he did not want anything to happen to her; that the defendant said she would make an examination and find out how much damage had been done; that Alda went down the front way and she went down the back way and called her daughter-in-law in the office because the girl was hysterical; that when Alda got on the operating table she said, "O, my! If I had not used that button-hook I would not have to be here!" that the defendant used a speculum and found a little oozing of blood and great inflamma-

tion; that she swabbed the place out with an antiseptic on gauze, using a little dressing forceps; that she did not do anything else or cause any abortion; that when they went up-stairs she told McDonald that he should get Alda into a hospital as quick as he could, and he asked her how much money she would want to put her into a hospital, and she told him $50 in advance; that he paid her $50 and they left, and she telephoned the American Theatrical Hospital and engaged a room for the patient; that McDonald came back the next day, about two o'clock in the afternoon, and told her that the patient was feeling better, and that evening she told the chief surgeon at the hospital not to reserve the room, because the patient was better.

William Heyward, a son of the defendant, and Ada Kanter, who was then a nurse, testified that they were in the library adjoining the office, with an open doorway with portieres, when Alda Christopherson was at the office the first time. He said that she was stepping carefully and said she was in bad; that she had been taking dope and had used a button-hook on herself; and she testified that Alda said she was in much pain and was suffering, and said that she grew desperate and used a button-hook, and the defendant said she thought she had done enough and asked her if she had any results, and Alda said a little but not enough, and the doctor said she could do nothing for her unless she went to the hospital. Her daughter-in-law testified that when the defendant and Alda went down to the basement on the second visit Alda acted as though she was in pain, walked slowly and looked awfully pale; that when she got on the table the defendant said she would make an examination and see what damage she had done to herself by using a button-hook, and the girl said if she had not used a button-hook she would not have been there. George J. Hobbs testified that on February 22, at the time of the second visit, he was attracted by the way the girl behaved; that she seemed to be miserable and was moan-

ing and crying and said she was suffering, and that Mc-
Donald stayed up-stairs and the defendant and Alda went
down-stairs. Lillian Thompson, a clerk in a five-and-ten-
cent store, testified that on February 21 Alda came in the
store about ten o'clock, walking slowly, carefully and limp-
ing, and purchased some sanitary napkins; that she told
the witness what her trouble was and pointed to a button-
hook lying on the counter and said she had used a crochet-
hook and a button-hook, and that she was going to a doc-
tor's office and was afraid the doctor would not do anything
for her. There was evidence of the employer of this wit-
ness that her reputation for truth and veracity was bad.
In an affidavit filed on a motion for a new trial a woman
stated that when McDonald and Alda came to the defend-
ant's office Alda was rubbing her thighs, knees and abdo-
men, moaning and crying hysterically.

About 2:30 o'clock in the morning of February 23 Alda
Christopherson became very ill and vomited and had cramps
and chills. She was better during the day but remained
in bed. On Thursday she became much worse, and Dr.
Barnsbach was called about nine o'clock in the morning.
He found her in a state of collapse and got no definite in-
formation of the trouble and considered it to be ptomaine
poisoning or something of that kind. He ordered the pa-
tient to the Lakeside Hospital and went there and saw
the operation already described. As Alda was being taken
away on a stretcher from the house of Mrs. Holmes, where
she worked, the defendant called and saw the girl and was
told that the doctor had diagnosed the case as ptomaine
poisoning, and she did not tell of any previous connection
with the case or that she knew anything about it or had
been paid $50 to reserve a room at a hospital. Dr. A. R.
Johnson, the surgeon at the hospital who performed the
operation and saw the hole in the uterus and its condition,
testified that the hole torn in the upper part of the uterus
could not have been caused by a button-hook; that it would

have to be caused by some instrument introduced that could be spread, to make such a hole. The uterus was preserved and introduced in evidence and the jury had the advantage of a view of it.

Three doctors testifying as experts, in answer to a hypothetical question based on the evidence and the fact that the uterus around the hole was sloughing away, gave opinions that the rupture could have been made by the use of a long-handled button-hook, one of the witnesses answering, "It is possible; it is possible." They were of the opinion that on account of the condition of the uterus around the hole the rupture had been made a longer time than since the visit to the defendant's office, but the opinion was expressed that the length of time varied, depending on the infection and the virulence of the germ with which it started.

The first alleged error is that the court erred in overruling a motion to quash the indictment. The defendant was first named in the indictment as Lillian Hobbs, otherwise called Lillian Seymour, and afterward throughout the indictment she was named as "the said Lillian Hobbs." The argument is that it was necessary in each instance to name her as Lillian Hobbs, otherwise called Lillian Seymour; but the reference was to the defendant previously mentioned in the indictment, and that was sufficient.

It was charged in the indictment that the abortion was caused by a certain instrument a particular description of which was to the grand jurors unknown, by forcing, thrusting and inserting the instrument into the uterus. It was no objection to the indictment that there was no further description of the method by which the abortion was performed.

The names of two witnesses who afterward testified on the trial were not indorsed on the indictment, but that was no ground for quashing the indictment. It only raised a question as to their testifying on the trial, and no objection was made when they were offered as witnesses.

Evidence was admitted tending to prove that the defendant had caused an abortion upon another girl, Ellen Matson, about the first of November, 1917, from which the girl died and for which the defendant was under indictment. The general rule is that proof of any other offense than that for which the accused is being tried, although of a similar character, is inadmissible. Where the intent is not required to be specifically proved, or from the nature of the offense under investigation proof of its commission as charged necessarily establishes the criminal intent, or the intent is a necessary conclusion from the act done, evidence of the perpetration of other like offenses should not be admitted. Intent to kill does not enter into the definition of murder. On a trial for murder it is sufficient to prove that the unlawful killing was done with malice aforethought, either express or implied, which means that it is sufficient to prove general malice as distinguished from a specific intent to kill. (*Adams* v. *People,* 109 Ill. 444.) Hence it is the invariable rule of law in this State that in a trial for murder it is not admissible to prove a conviction for or the commission of a former murder by the accused to establish his guilt or intent. This must necessarily be so no matter by what means the former murder may have been committed, and it is not admissible in a case like the one now before us, where the charge is that the murder was committed by a criminal abortion. In this case it is not contended that there was any specific intent on the part of the plaintiff in error to kill and murder Alda Christopherson. The attempt by the People was to prove express malice by showing that she committed and intended to commit the criminal abortion, which the statute defines to be murder if such criminal abortion results in the death of the person upon whom the abortion is committed. In this case the People introduced evidence tending to show that the plaintiff in error committed a criminal abortion upon Ellen Matson, and also the further proof that she died as a result of that

abortion. If it be conceded that it was proper for the People to prove the commission of this abortion upon the Matson girl, it was not necessary in this case, as shown by the evidence, to introduce further proof, or any proof, of the fact that she died as the result of the abortion in order to establish that an abortion had been committed. The evidence as admitted not only tended to establish the proof of a criminal abortion but also to establish another murder by abortion. It was therefore grave error for the court, under any view of the case, to admit evidence showing that the Matson girl died as the result of the abortion. Such proof, in every case where evidence of another abortion is admissible, should be confined solely to the proof that a criminal abortion was committed and without admitting any evidence at all of the death of the victim as the result of the abortion or otherwise, or any evidence tending to show that the victim was dead, unless it is absolutely necessary to introduce some evidence or circumstances tending to show the death in order to establish the abortion. For instance, it might become necessary, as in the case now on trial, to introduce expert testimony of surgeons showing that they had examined the womb or uterus of the victim and to give evidence of such lacerations found by them, from which they concluded that an abortion had been committed and committed in a certain manner or by a certain character of instrument, and upon a contest upon such evidence it might be necessary to show that said organ had been removed from the body of the victim and the organ viewed by the jury for the purpose of settling the contention as to just what the organ showed. Such proof might be taken by the jury as some evidence of the death of the victim, but no witness, expert or otherwise, should be allowed in any case to testify to the death of the victim.

Where the intent with which an alleged offense was committed is a material element of the charge and such intent becomes an issue on the trial, proof of former simi-

lar offenses, within certain reasonable limits, is admissible as tending to throw light upon the intention of the accused in doing the act charged. (*State* v. *Brown,* 3 Boyce, 499; *People* v. *Molineux,* 168 N. Y. 264; *People* v. *Seaman,* 107 Mich. 348; *People* v. *Hagenow,* 236 Ill. 514.) Our statute defining abortion excepts from the penalties of the act any person who produces an abortion for the necessary purpose of preserving the life of the mother. It is apparent, therefore, that proof of the use of an instrument, drug or other thing for the purpose of producing an abortion would not necessarily prove the criminal intent necessary to make the person guilty of the crime of abortion. The criminal intent necessary to be established to convict a defendant charged with committing an abortion is the intent to commit a criminal abortion,—that is, an abortion for a purpose other than to preserve the life of the mother. The specific intent or purpose to produce a criminal abortion must be proved before the guilt of the accused is established, and proof of performance of former similar criminal abortions on the same or another woman is admissible, under the authorities, to prove such specific intent. A defendant could not render this testimony incompetent by interposing a particular defense to the charge. (*People* v. *Hagenow, supra.*) In its case in chief the State must prove all of the elements of the crime, including the intent, and need not wait to learn the character of the defense that is to be made by the defendant. The plea of not guilty puts in issue all material allegations and any proper defense may be shown thereunder. In *Clark* v. *People,* 224 Ill. 554, the defense was that the act was committed by the deceased, and the defendant denied that she did anything to cause deceased to abort. In that case we held that it was competent to prove declarations of the defendant to the effect that she was in the habit of producing abortions or that she had solicited such work. In *People* v. *Schultz-Knighten,* 277 Ill. 238, defendant denied that she did the

act resulting in abortion, and we held it was admissible to prove that she had previously committed an abortion on another woman. In the *Hagenow case, supra,* the defendant denied performing the abortion and claimed that it was done by another physician before deceased came to defendant's office. The holding in that case was that proof of a former abortion was admissible to prove the criminal intent. So it is not the law, as claimed and insisted by the plaintiff in error, that in order for such proof to be admissible it must further appear that the defendant admits the commission of the act but alleges that such act was necessary for the preservation of the life of the patient. Courts of other States hold to the same effect, and such proof is not confined to former convictions for abortion but may be made by parol evidence and where the defendant was never tried for such former offenses. *People* v. *Seaman, supra; State* v. *McCurtain,* (Utah) 172 Pac. 481; *Commonwealth* v. *Blair,* 126 Mass. 40; *Rosenweig* v. *People,* 63 Barb. 634; *Rex* v. *Bond,* 2 K. B. 389; *Regina* v. *Dale,* 16 Cox's C. C. 703; *State* v. *Newell,* 159 N. W. 829.

Trial courts must keep in mind that proof of similar offenses is not admissible to prove that the defendant committed the act charged but is only to be considered by the jury in determining the intent with which the act charged was done, where the jury are satisfied by the other testimony that the defendant committed the act charged in the indictment. This limitation should be made clear in the court's rulings on the admission of this character of evidence and on its rulings to objections made to the arguments of the State's attorney. The court, when asked, should give instructions clearly pointing out the purpose for which the evidence is admissible and confine the argument to that purpose. The admission of evidence of similar offenses in a case of this character is an exception to the general rule, and unless it is kept within the limitations pointed out by the authorities it might result in denying the

prisoner that fair and impartial trial guaranteed by the law and might break down those barriers erected by the law and designed for the protection of the innocent. In this case we think that the proof of the subsequent abortion alleged to have been committed by the plaintiff in error on Ellen Matson almost two years after the abortion now in question was committed had no tendency whatever to prove the criminal intent charged in the present case and that the admission of the evidence concerning the subsequent offense was reversible error on the part of the court. There was no proof of any prior offense of a similar character committed by plaintiff in error. The proof of former criminal abortions is admitted upon the theory that they create a reasonable presumption of a practice and a business of performing such criminal acts, and particularly where it is shown that such former acts were performed solely for a money consideration on the part of the defendant, and the more numerous the acts so proved the stronger, ordinarily, will be the presumption. When such former acts are performed upon the same woman upon whom it is charged in the case on trial such offense was committed, such proof may also serve to show the knowledge of the defendant that the woman was pregnant as well as his criminal intent, where such pregnancy is questioned. (*People* v. *Schultz-Knighten, supra.*) Where there is proper proof of former criminal abortions committed on other women, proof of a subsequent offense upon another woman shortly after the time the abortion in question was committed tends to establish, in the absence of proof to the contrary, the presumption not only that the defendant had been engaged in such unlawful business, but that the business had been continuous up to the commission of the last offense and that it was prosecuted with guilty intent. If there had been proof of former criminal abortions by the defendant we would unhesitatingly hold that proof of the subsequent offense is also admissible to establish such criminal intent,

but without proof of former offenses the proof of a subsequent abortion has no tendency whatever to prove that the defendant was engaged or intended to engage in such unlawful business two years before the commission of such subsequent offense or at any other time previous. It is contrary to the theory of our criminal law to presume that a defendant has been a criminal from his birth or from any former period of time or that he has a guilty intent, in the absence of proof that he has formerly committed a criminal act. His first offense must be held to be the beginning of his criminal career, and in every such case every element of the crime must be proved and not presumed from subsequent acts alone.

Other courts have made holdings similar to the foregoing in cases where proof of prior offenses was held admissible and proof of subsequent acts inadmissible in the same case, where no proof of former acts had been made. In the case of *People* v. *Fowler*, 104 Mich. 449, the defendant was tried for adultery. The lower court admitted testimony to show that a criminal offense was committed about three months after the offense charged in the information. The Supreme Court of that State held that it was error and that it was wholly incompetent to show subsequent acts for any purpose, at the same time holding that proof of prior offenses of the same character was admissible to prove intent. In *Lovell* v. *State*, 12 Ind. 18, where the charge was incest, it was held that evidence of acts of sexual intercourse subsequent to the time laid in the indictment was incompetent to prove any issue in the case. In *State* v. *Markins*, 95 Ind. 464, where the defendant was also charged with incest, previous acts of sexual intercourse were held admissible, and that case was distinguished, on the facts, from the *Lovell case, supra.* In the case of *People* v. *Buffom*, 214 N. Y. 53, the court of appeals held that evidence of a subsequent poisoning of the child of the father, the latter being alleged to have been killed by defendant by ad-

ministering to him arsenic with intent to murder him, was not admissible for any purpose, although the State claimed that it was admissible upon the alleged ground that the defendant contended that William Buffom, the father, killed himself as a part of a scheme of his own, involving not only his destruction but the destruction of his children comprising the family living at home.

There are a number of cases holding that in cases similar to the foregoing, where former acts of the same character between the same parties have been proved, subsequent acts of the same character become corroborative or cumulative evidence and for that reason are admissible in evidence. Some of these authorities are cited and commented on in the note to the case of *People* v. *Molineux,* 62 L. R. A. 335. On page 229, in the same opinion in the *Molineux case,* it is noted that in an English case (*Regina* v. *Dale, supra,*) wherein the defendant was charged with feloniously and unlawfully using a certain instrument, to-wit, a quill, with intent to procure a miscarriage, it was relevant, in order to prove the intent, to show that at other times, both before and after the offense charged, the prisoner had caused miscarriage by similar means on other and different women. Such a holding is far different from the holding that subsequent criminal acts of the same character are admissible to prove the criminal intent where no prior criminal acts committed on other women are proved. In the case of *Scott* v. *People,* 141 Ill. 195, the defendant was charged with criminal abortion. This court held that in that case prior acts and subsequent acts of the defendant tending to show his knowledge of the woman's pregnancy and his intention to commit an abortion upon her were admissible, for the reason that the acts are connected and parts of one continuous transaction and all together constitute but one offense to procure the same abortion. There is no case in this State directly holding that subsequent acts of abortion committed upon other and different women, where no

such prior acts were proved, are admissible. The case of
*People* v. *Hagenow, supra,* cites the case of *Scott* v. *People*
and makes the general statement that proof of both former
and subsequent criminal acts of abortion on other and dif-
ferent women are admissible to prove the intent of the de-
fendant in the case in hand. The question whether or not
such subsequent acts, alone, are admissible was neither be-
fore the court for decision nor further discussed. The hold-
ing in that case is not, therefore, to be construed as sanc-
tioning the rule contended for by the People in this case,
that such subsequent acts, alone, are admissible, except
where the subsequent acts are between the same parties, as
in the *Scott case.* To the same effect, exactly, as the rul-
ing in the *Scott case* are the cases of *Lamb* v. *State,* 66 Md.
285, and *Commonwealth* v. *Corkin,* 136 Mass. 429, where
in each case the subsequent acts proved were similar in char-
acter or purpose and committed upon the same woman. In
no case, so far as we have found, has any court held, where
the question was involved, that in addition to proving prior
acts or subsequent acts of criminal abortion it is proper or
admissible for the State to prove that such criminal acts
resulted in the death of the victim, for the purpose of es-
tablishing the guilty intent of the defendant to commit a
criminal abortion, and it certainly cannot be said with rea-
son that such additional proof has any tendency to prove
such intent. The question whether or not such additional
proof should be made was not the direct or a direct ques-
tion raised in *People* v. *Hagenow, supra,* or in *People* v.
*Schultz-Knighten, supra,* but the direct question in both
cases was whether or not proof of prior criminal abortions
was admissible to prove guilty intent. This court is there-
fore not bound by casual statements regarding such addi-
tional evidence, but it is directly raised in this case, and
we hold that the additional evidence is improper, as was
also the whole of the evidence concerning the alleged abor-
tion committed on the Matson girl. It will therefore not

be necessary to consider any other question or error argued by counsel with reference to evidence pertaining to that abortion.

It is alleged that the court erred in admitting in evidence the uterus. Such evidence is ordinarily admitted, and the objection is that the evidence showed conclusively that Alda Christopherson died as the result of an abortion produced by some sort of an instrument which had punctured the upper part of the uterus, and the admission of the uterus added nothing to the proof. The jury had a pretty full description, but a view of the thing itself was an aid in understanding the nature and extent of the injury and determining how the offense was committed.

It is insisted that the verdict finding the defendant guilty in manner and form as charged in the indictment was insufficient because the charge was murder by abortion and it was necessary that the verdict should make the same recital. The verdict was not erroneous or insufficient.

Complaint is made that the court did not give an instruction permitting a conviction for manslaughter. If the defendant desired such an instruction one should have been offered and the court permitted to rule upon the propriety of giving it, in view of the fact that the statute makes the offense murder and nothing else.

Defendant also complains of improper remarks in the State's attorney's argument to the jury and of improper conduct of the jury. It is evident from what we have already said that further consideration of these matters is unnecessary. It would also be improper for us to discuss the evidence on the merits or pass upon the further question whether or not the verdict is supported by the evidence, as the cause may be re-tried.

The judgment of the criminal court is reversed and the cause remanded for the errors indicated.

*Reversed and remanded.*