[No. 31110. Department One. December 22, 1949.]

W. C. McCALL, *Respondent*, v. WASHINGTON CO-OPERATIVE FARMERS ASSOCIATION *et al., Appellants.*[1]

*Senn, Recken & Recken* and *Ned Hall,* for appellants.

*D. Elwood Caples* and *W. H. Morrison,* for respondent.

GRADY, J.—This action was instituted by W. C. McCall against the Washington Co-operative Farmers Association and Theodore Chick to recover damages done to his truck and its contents by a fire alleged to have been caused by the defendants. The defendants counterclaimed for dam-

[1]Reported in 212 P. (2d) 813.

ages done to their truck and contents. A jury awarded the plaintiff a verdict. An appeal has been taken from the judgment.

The material facts leading up to the damages sustained by each party are not in dispute and are as follows: There was a bridge over the Washougal river between Camas and Washougal, Washington. A truck owned by respondent and loaded with gasoline was being driven in an easterly direction. About the time this truck was driving onto the bridge, another truck loaded with hay was driven onto the other end of the bridge. Owing to clearance conditions at the easterly end of the bridge, the driver of the hay truck caused it to straddle the center line. The driver of respondent's truck moved it over to his extreme right-hand side and stopped it about the middle of the bridge. The driver of the hay truck moved it over to his side of the bridge and passed slowly by the standing truck. A truck owned by the co-operative association, and driven in an easterly direction by appellant Chick, came around a curve in the highway west of the bridge. The driver applied his brakes, but collided with the rear of respondent's truck. The impact broke off a bracket, which opened two holes in the tank of respondent's truck, and gasoline commenced to escape. The hay truck was driven off the bridge. A fire occurred which practically consumed both trucks and the bridge.

The conflict in the testimony arises over the cause of the fire. There is testimony to the effect that gasoline which escaped through the bracket holes flooded over the motor of appellant's truck and ignited. Other testimony is to the effect that the passing hay truck knocked a drum of kerosene off respondent's truck and it ignited. The jury concluded that it was the former situation by which the fire was caused.

The assignments of error are directed to the refusal of the court to give proposed instructions in support of appellants' theories, and to the sustaining of an objection made to an impeaching question.

The first two assignments of error are based upon the failure to give the following instructions:

"Before you can find a verdict in favor of the plaintiff and against the defendant you must be satisfied by the greater weight of the evidence that the fire which destroyed the truck was caused by the negligence of Mr. Chick, and that this negligence was what is known as the sole and proximate cause of the damage. Should you find that the fire had started before the collision between the Farmers' Cooperative and the McCall truck and this fire was the cause of the damage, your verdict should be for the defendants.

"If you find from the evidence that the fire which destroyed the truck of the plaintiff was not caused by the collision between the two trucks, then your verdict should be for the defendant."

 It is the contention of appellants that they were entitled to have these instructions given in support of their theories: that, in order to recover, the respondent must establish as a fact that the fire was caused by their negligence; that such negligence was the proximate cause of the damage done by the fire; that, if the fire had started before the collision between the two trucks and it was that fire which caused the damage, there could be no recovery against them; or, if the fire was not caused by the collision between the gasoline trucks, there could be no recovery. The appellants urge that the instructions contain correct statements of the law as applied to their defenses and counterclaim, and that no other or sufficient instructions were given by the court to adequately submit to the jury the theories embodied in such proposed instructions.

In its instructions, the court informed the jury with reference to the specific charges of negligence made by the respective parties and made it very clear that, in order to recover, the respondent must prove by a preponderance of the evidence that the fire was caused by some act of negligence on the part of appellants, and that such negligence was the proximate cause of the fire. The instructions were so worded that the jurors could not help understanding that, if the fire was not caused by the collision between the

two trucks but had started from some other cause, then appellants would not be liable. We are of the opinion that the jurors were fully and properly instructed on the theories embodied in the proposed instructions.

The appellants proposed and claim error in the refusal of the court to give the following instruction:

"If you find from the evidence that the collision between the truck of the plaintiff and the defendant was proximately caused by the negligence of the driver of the plaintiff's truck in any of the respects charged in the cross-complaint, then your verdict should be for the defendant and with the assessment of damages."

On this theory of the case, the jurors were informed with reference to the acts of negligence on the part of respondent alleged in the answer and counterclaim and were given plainly to understand that, if respondent was negligent in the respects claimed, and such negligence was the proximate cause of the collision between the two trucks, then the appellants would be entitled to a verdict against the respondent. An instruction was given on the measure of appellant's damages. The court informed the jurors of the statutory duties and obligations of one who stops his motor vehicle on a public highway with reference to oncoming traffic. We find the instructions given clearly and adequately cover all that was embodied in the proposed instruction.

The other assignment of error on the subject of proposed instructions is based upon the refusal of the court to give the following:

"If you find from the evidence that the driver of the plaintiff's vehicle stopped his truck suddenly without warning on the Washougal bridge and that the driver of the truck of the defendant, although exercising due care in all respects, did not observe that the truck had stopped until too late to avoid the collision, then your verdict should be for the defendant."

The court refused to give this instruction upon the ground that it was not consistent with the proven facts of the case, and with this we agree. There was no evidence

sufficient to make the question of sudden stoppage an issue for the jury to determine. The undisputed fact is that, when the driver of respondent's truck saw the hay truck in the center of the bridge ahead of him, he prudently stopped his truck. The bridge had two lanes, and although there was sufficient room for two trucks to pass each other, it would be by a close margin. The jurors were fully informed as to the rights of the appellants with reference to respondent's truck when it stopped on the bridge and were given to understand that, if the respondent was negligent in that respect, and such negligence was a proximate cause of the collision, then appellants were entitled to recover.

The court properly instructed the jury on questions of contributory negligence and proximate cause. The issues of fact tendered by the parties to this action were simple. The damage to the trucks did not arise out of the collision but out of the fire, and the real question to determine was the cause of the fire.

The instructions given by the court adequately presented the theories of both parties, and the refusal to give the proposed instructions was not prejudicial, even though it may be said that they stated correct principles of law.

The final assignment of error arises out of the impeachment of a witness by an attempt to show a prior inconsistent statement. The theory of appellants was that the hay truck, in passing the respondent's truck on the bridge, dislodged a drum of kerosene which ignited and caused the fire. During the cross-examination of H. D. Stevens, the driver of respondent's truck, he was asked whether right after the accident, or right after the fire, in the presence of Mr. H. O. Hansen and Mr. Oren Gummert on the east end of the bridge, or in the immediate vicinity, he had stated that he had gotten on the bridge before the hay truck and that the hay truck had sideswiped his car and knocked a barrel of kerosene over the side of his truck, and if he did not make such statement to them. He answered, "It is possible." He was then asked, "And didn't you further state that the fire started when the barrel of kerosene struck the

pavement on the bridge?" The answer was, "I did not." Later, Mr. Merril Herr was called as a witness by appellants and was asked the following question:

"Mr. Herr, did you hear Mr. Stevens, after you and he had gotten off the bridge say or use these words or substantially these words: 'That he, Stevens, had been on the bridge before the hay truck and that the hay truck had side swiped him and knocked a barrel of kerosene off the side of his truck?' "

The question was objected to upon the ground that the original impeaching question directed to Mr. Stevens did not mention the name of Merril Herr, the impeaching witness then being interrogated. The court sustained the objection upon the ground that an impeaching question must embody the time, place and persons present. The question to determine is whether there was a sufficient foundation laid for the impeachment of the witness by prior inconsistent statements. In *Webb v. Seattle*, 22 Wn. (2d) 596, 157 P. (2d) 312, 158 A. L. R. 810, and *Kellerher v. Porter*, 29 Wn. (2d) 650, 189 P. (2d) 223, we discussed that subject. In the *Webb* case, we said:

"When the attention of the witness is called to what it is claimed he had previously said, the time when, the place where, and the person with whom the alleged conversation was had, should be stated."

In the *Kellerher* case, we said:

"It is also true that it is the general rule in this state that, before impeaching evidence can be introduced concerning contradictory statements made out of court by a witness, the time when, the place where, and the circumstances under which the contradictory statements were made by the witness must be given and opportunity afforded the witness to deny, admit, or explain them."

Although in the latter case the element of the person or persons present is not mentioned, unless it may be said to be included in the phrase "and the circumstances under which the contradictory statements were made by the witness," it is generally found in our cases that the names of the person or persons present were embodied in the im-

peaching question. We find no case directly deciding that the failure to name all of the persons present is fatal. There are cases where, after naming one or more persons, the interrogator adds "and others."

It is the duty of the court to protect the witness sought to be impeached by requiring the impeaching question to be so framed that it will enable him to refresh his recollection, so that he can recall whether or not he made the statement attributed to him, and give him an opportunity to explain it. We think it proper to say that the court must necessarily have considerable discretion in this respect. The trial court was of the opinion that, if it was desired to use Mr. Herr as an impeaching witness, his name should have been mentioned in the impeaching question. We cannot say that the court abused its discretion, or that its ruling was so prejudicial as to justify a reversal of the judgment.

The judgment is affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and DONWORTH, JJ., concur.