MELVIN L. CRANFORD, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 4218

March 15, 1960                    349 P.2d 1051

*Llewellyn A. Young,* of Lovelock, and *Clifton Young,* of Reno, for Appellant.

*Roger D. Foley,* Attorney General, State of Nevada; *James A. Callahan,* District Attorney, Humboldt County; and *Richard G. Campbell,* Associate District Attorney, Humboldt County, for Respondent.

## OPINION

By the Court, McNAMEE, C. J.:

Appellant was found guilty by jury verdict of second degree murder. Appeal is taken from the judgment based on such verdict.

Appellant and his wife became estranged, and in February 1957 she commenced action against him for divorce. At that time there were two children, the issue of the marriage, and in addition a 13-year-old daughter of the wife by a former marriage. A fourth child was born in July 1957.

The evidence justifies the conclusion that the appellant and his wife were living separate and apart from February 1957 to the 23rd day of September 1957, when the assault took place resulting in the death of one Schutt. There was some evidence that a reconciliation had been attempted and that appellant had been in the home which his wife had rented and where she was living with the children.

On September 22, 1957, appellant who had been working in Beowawe came to Winnemucca with the stated

purpose of seeing his wife and children. He went to said house and found that the children were alone and the oldest child, pursuant to directions from her mother, would not permit him to enter. Thereafter, he planned to rent a hotel room for the night and in preparing to do so, he came across his wife and Schutt sitting in a bar together. He approached them and threatened to harm Schutt if the association between Schutt and appellant's wife did not stop. Soon thereafter and about 3:00 A. M., September 23, Schutt and Mrs. Cranford left the bar, entered a taxi and went to her home. Appellant followed in his own automobile. Upon arriving at the home, Mrs. Cranford went to the door and ascertaining that the children were all right, she returned to the taxi to get Schutt, and then the two of them proceeded to the front door of the house. About this time appellant, who had driven up behind the taxi, got out and fired two shots, which he said were intended as a warning to deceased, and then went up to the front porch of the house where his wife was in the process of entering the front door. He grabbed Schutt from behind, turned him around, and placed himself between the door and Schutt. There is evidence to the effect that a third shot was fired during the interval between the firing of the first two shots and the time he grabbed Schutt. He then pistol-whipped Schutt three times on the head and when Schutt sank down on the porch he entered the living room and commenced hitting his wife with the pistol. She ran out the door, her face bloody, followed by the oldest child, and stated she was getting the police. Appellant then left and surrendered himself at the police station. The victim managed to walk a few hundred feet to the Sonoma Inn and was, from there, taken to the hospital. His death resulted a few hours later that same day while he was undergoing skull surgery.

Appellant cites eleven errors:

1. After the jury was selected and counsel for appellant given the opportunity to make an opening statement to the jury, he attempted to augment his statement

118

with a placard on the blackboard which purported to define the elements of certain types of homicide. The trial court refused to permit such a demonstration, holding that counsel was limited in such statement to a relation of the facts he intended to show by his evidence; and that the use of said placard was an attempt to present to the jury the law involved in the case. The court was correct in such ruling. State v. Kendall, 200 Iowa 483, 203 N.W. 806. See 23 C.J.S., Criminal Law sec. 1086, p. 531, n. 61.

2. During the direct examination of appellant, objection was made by respondent to an interrogatory which resulted in the court saying "There is no evidence in here up to this point of the deceased being the aggressor. The objection is sustained." Appellant insists that such statement constitutes error because it amounts to a comment by the court upon a question of fact. At the time the court made such statement, the only evidence of the incident resulting in Schutt's death was the testimony of the appellant that he had fired two shots as a warning to Schutt and that in approaching Schutt, he grabbed him and turned him around. This testimony given by the appellant himself shows that appellant, and not the deceased, was the aggressor. The court's comment, in view of the state of the record at that time, was not prejudicial.

3. Appellant contends that the court erred in refusing him permission to testify as to his knowledge of the reputation of the deceased for violence. The exact question asked of appellant by his counsel was "Do you know anything of his reputation for peace and violence?" If appellant's counsel had asked appellant if he knew what deceased's reputation in the community for peace and quiet was and, if so, whether it was good or bad, the trial court indicated it would allow such inquiry. Appellant's counsel failed to proceed further along this line of questioning and he is therefore precluded under these circumstances from claiming error

because of the court's ruling. See State v. Helm, 66 Nev. 286, 209 P.2d 187.

4. After appellant had testified that he had had a meeting and conversation with Schutt on July 15, 1957, his counsel offered evidence (in the absence of the jury) to show that in said conversation appellant had warned Schutt to stay away from his wife. He contends that such evidence would tend to show the state of appellant's mind on September 23, 1957, the date of the shooting. In rejecting such offer of proof, the trial court said: "What happened in July, any conversations, certainly isn't a defense to a murder or homicide on September 23rd, and certainly it wouldn't be a provocation for a killing on September the 23rd." This ruling was correct. Evidence of prior difficulties between accused and the deceased under some circumstances might be admissible to show accused's malice. People v. Fleming, 218 Cal. 300, 23 P.2d 28. Its exclusion obviously is not prejudicial to the accused.

5. The trial court rejected offered testimony which tended to show that the deceased during a certain period had been carrying on an affair with appellant's wife. The said period of time was more than 5½ months before the homicide and subsequent to the time she had commenced an action for divorce against appellant. If such an affair had in fact been going on, it does not appear that appellant was cognizant of it. Appellant contends that the court erred in rejecting this testimony not that it would be a defense to the charge, but that it might tend to reduce the degree of the offense. Even if appellant had acquired knowledge of any such affair, such acquisition would have taken place long before September 23, 1957, and remoteness in time would preclude reduction of the crime from murder to manslaughter. NRS 200.060; People v. Gingell, 211 Cal. 532, 296 P. 70.

6. Error is claimed in the court's denial of appellant's request to permit appellant to re-enact in court

what happened on the porch at the time of the assault which resulted in Schutt's death.

It is conceded that a trial court has great discretion in matters of this kind. In denying appellant's request the court said: "He can describe it as he wants to." Appellant then described in detail his version of what happened. We see no abuse of discretion. This claim of error is without merit.

7. After appellant had given testimony that he had been a hard working, industrious family man dedicated to the welfare of his wife and children for the period from June 1956 to the date of the homicide, the State on cross-examination was permitted to question him regarding his whereabouts during the periods between December 27, 1956 and February 11, 1957, and from March 27, 1957 until fifty days thereafter. On such cross-examination appellant disclosed he had been in jail during both of said periods, thus curtailing or precluding his ability to support his family during these periods. The two periods were within the entire period covered by direct examination. Appellant's testimony on direct examination was intended to show conduct which might warrant the jury in finding him guilty only of manslaughter. Therefore, questions on cross-examination were material both to the issues and to impeachment. State v. Emmanuel, 42 Wash.2d 1, 253 P.2d 386. The case cited by appellant, State v. Huff, 11 Nev. 17, is not in conflict with the ruling of the trial court on this point. There was no error in permitting such cross-examination.

8. During the cross-examination of appellant, he was asked if he knew whether his wife had knowledge of certain events that had transpired. He answered: "I don't know, you will have to ask her about that." Whereupon counsel for respondent informed appellant that his wife could not testify unless he consented. Appellant was then asked if he would give such consent. Appellant asked his counsel for advice and his counsel stated

that he had advised appellant not to consent. It is unnecessary to determine whether this procedure would have been prejudicial error if proper objection had been made at the trial, because in the absence of any objection thereto in the trial court, appellant cannot claim error for the first time on appeal. State v. Ceja, 53 Nev. 272, 298 P. 658, 2 P.2d 124. In the absence of any objection, the court is not called upon to make any ruling which could be deemed excepted to under NRS 175.525.

9. Error is claimed in the court's refusal to permit impeachment of one Erquiaga, a prosecution witness, by showing through a third party a prior inconsistent statement made by said witness.

On direct examination, Erquiaga had testified that during the night of the shooting he had seen appellant's wife and the deceased sitting at a bar when appellant walked in. When asked if either one of them had placed his arms around the other, he replied: "Mrs. Cranford did, yes, put her arm around Andy Schutt." On cross-examination he denied he had made a statement to one Joe Williams that "they both had their arms around each other * * * they were sitting there with their arms around each other when he came in."

If it was relevant to the issues whether one or both had arms around each other, then in order to prove an inconsistent statement with respect thereto, the laying of a proper foundation would be required (in order to inform the witness concerning that which he is being asked about) before the inconsistent statement could be shown through the testimony of a third party.

Here the foundation consisted of asking Erquiaga preliminary questions whether he ever made the particular statement to Joe Williams on or about January 9 or 10, and in describing who Williams was. The questions were not specific as to place nor with respect to any other details as to the occasion. Although the witness remembered having a conversation with Williams, he did not remember the particular conversation embodied in the question. It was for the trial court to

determine whether Erquiaga's attention was adequately called to the alleged utterance, or in other words, whether a proper foundation had been laid for the introduction of evidence of an inconsistent statement. McCall v. Washington Co-operative Farmers Ass'n., 35 Wash.2d 337, 212 P.2d 813; Wigmore on Evidence, sec. 1029 (3d ed. 1940). Its determination of such matter will not be disturbed on appeal.

10. Appellant contends that the trial court erred in its refusal to give his offered instruction concerning the degree of proof necessary to establish a complete defense. This assignment is without merit. An examination of all of the instructions given reveals that the subject matter of this offered instruction was fully and properly covered by the instructions of the court as given.

11. The court refused to give instructions offered by appellant pertaining to self defense and defense of habitation. Its action in this regard was proper. The subject of self defense was fully covered by the court's instructions as given. There was nothing in the evidence from which a jury could infer that appellant in his assault upon the deceased was defending his or anyone else's habitation.

No prejudicial error appearing, the judgment is affirmed.

BADT and PIKE, JJ., concur.