413 P.2d 739

**The STATE of Arizona, Appellee,**

**v.**

**Hector N. BALLESTEROS, Appellant.**

No. 1485.

Supreme Court of Arizona.

In Division.

April 29, 1966.

Rehearing Denied May 24, 1966.

Darrell F. Smith, Atty. Gen., Norman E. Green, County Atty. of Pima County, Howard Kashman, Deputy County Atty. of Pima County, for appellee.

Jack I. Podret, Tucson, for appellant.

STRUCKMEYER, Chief Justice.

Appellant Hector N. Ballesteros was informed against, tried and convicted on two counts of illegal sale of narcotic drugs in violation of A.R.S. § 36–1002.02, as added. He appeals from the judgments of conviction and from the order denying his motion for a new trial on both counts.

Count One was supported by evidence of a sale on October 18, 1963, and Count Two by evidence of a sale on October 30, 1963. Similar procedures were employed by the police in obtaining evidence in both counts. Informer Henry Lugo made arrangements for a sale with appellant. Lugo would come to the State Building in Tucson, Arizona, where his clothing, body and automobile would be thoroughly searched. He would receive a five dollar bill with which to consummate the sale and he would then drive to a predetermined destination while being followed by narcotic agents.

Count One occurred in Lugo's motel room. After searching Lugo's room, the agents stationed themselves in an apartment opposite that of Lugo's. The agents testified to the arrival of the appellant at Lugo's apartment and that appellant entered Lugo's apartment momentarily and left shortly thereafter. The agents followed Lugo back to the State Building, whereupon Lugo produced a small package, "bindle", of heroin which he gave to his supervisor, Agent Ed Cleveland.

The transaction involved in Count Two occurred in the vicinity of Convent and Kennedy Streets in Tucson. Lugo parked his car with two agents nearby in a position to observe Lugo's car through the use of night binoculars. Agent Cleveland testified that appellant approached Lugo's car, Lugo slid over in order to talk to him and that the appellant was leaning in the window. Lugo once again, at the State Building, turned over a small package of heroin to Agent Cleveland. The two purchases were twice chemically analyzed. Both indicated the presence of heroin.

As his first ground of appeal, appellant alleges reversible error resulting from a failure on the part of the State to prove the corpus delicti. Appellant relies on State v. Moreno, 92 Ariz. 116, 374 P.2d 872, where this Court dealt with the question as to what amount of narcotic drug would be sufficient as evidence to sustain a conviction for the unlawful possession of narcotic drug. The Court laid down the following test:

"We believe the correct rule to be applied under a statute such as ours is that where the amount of a narcotic is so small as to require a chemical analysis to

detect its presence, the quantity is sufficient if useable under the known practices of narcotic addicts. We hold that only in those cases where the amount is incapable of being put to any effective use will the evidence be insufficient to support a conviction." State v. Moreno, 92 Ariz. 116, 120, 374 P.2d 872, 875.

 Appellant, in the instant case, asserts a fatal omission due to the State's failure to specifically establish that the amount of heroin sold was "useable under the known practices of narcotic addicts." Appellant's position is without merit. The charge of possession of a narcotic drug, as in other crimes, requires a union of act and intent. State v. Pearson, 98 Ariz. 133, 402 P.2d 557. As a matter of law the intent necessary to establish the crime of possession is not present when the amount is so minute as to be incapable of being applied to any use, even though it might be identifiable as narcotics by chemical analysis. But where the crime charged is the sale of a narcotic drug, the required intent is established by the transfer of any amount when the accompanying circumstances indicate an intent to sell.

 Appellant next urges that the trial court erred when it failed to test the competency of the State's witness, Lugo, an admitted addict, by having him submit to a Nalline test in order to determine if he was under the influence of narcotics at the time of the trial. Appellant asserts that the use of heroin can produce decay or derangement of the mind with a resulting impairment of memory, observation and recollection. We do not question appellant's conclusion in this respect but being under the influence of narcotics does not necessarily disqualify a witness from testifying. As was said in Schneiderman v. InterState Transit Lines, Inc., 394 Ill. 569, 69 N.E.2d 293:

"The question of the competency of a witness and the credit to be attached to his testimony are closely related and should not be confused. The question of competency is for the court, and the weight to be accorded the testimony is for the jury." 394 Ill., at 577, 69 N.E.2d, at 297.

See also State v. Pearson, supra, and State v. Mangrum, 98 Ariz. 279, 403 P.2d 925.

The purpose of the Nalline test is to reveal the presence of narcotics in a person's body. See People v. Williams, 164 Cal.App. 2d Supp. 858, 331 P.2d 251. If the trial judge had ordered the witness to submit to a Nalline test the question of competency would still have remained to be determined. Here, the trial judge was satisfied from personal observation that the witness was capable of comprehending the significance of questions addressed to him and of responding in a lucid manner. We have examined the record and find no reason to doubt the court's conclusion that the witness was competent to testify.

Appellant's third ground of appeal is that the prosecutor questioned him as to his use of narcotics thereby implying a separate and distinct crime, that of possessing narcotics. The pertinent testimony given by the defendant during cross-examination follows:

"Q Were you on or about the 18th or the 30th of October, Mr. Ballesteros, were you using narcotics then?

"A Yes, sir, I was.

"Q Were you using it pretty heavy?

"A Not too heavy, a paper a day.

"Q About a paper a day?

"A Yes."

■ Appellant first makes the point that a defendant cannot be questioned concerning specific acts of misconduct not amounting to a felony. He admits that the above stated rule has exceptions. Other criminal acts will be admitted if they possess independent relevancy for some purpose other than showing a probability that the accused committed the crime for which he is on trial simply because of criminal inclination. See State v. Vallejos, 89 Ariz. 76, 358 P.2d 178, and Udall, Arizona Law of Evidence, § 115, page 228. He does not concede the applicability of this exception to the instant case.

■ We think that a defendant as a witness may be impeached by showing the use of drugs at the time of the purported offense. The evidence of a witness who is under the influence of drugs at the time of the occurrence to which he testifies is unreliable and the jury should consider this in arriving at a verdict. Markowitz v. Markowitz, Mo.App., 290 S.W. 119.

■ Appellant makes the further point that a substantial number of jurisdictions have held that proof of habits, such as the use of heroin, may not in themselves be employed for purposes of impeachment but are admissible only as incidental to proving decay or derangement of the mind. But we think this misses the point in issue. The prosecution was not attempting to prove decay or derangement of the mind. Rather, the purpose was impeachment by showing appellant's physical condition on the dates concerning which he was testifying—thereby attacking both his ability to observe and recall correctly.

Appellant's fourth assignment of error is that the trial court erred in failing to direct a verdict in his favor on the ground that State's witness Lugo was an accomplice and that, therefore, his testimony required corroboration. Appellant classifies Lugo as an accomplice by pointing to the following circumstances: That Lugo was a convicted felon, himself a user, a possible seller; that he had suffered from narcotics withdrawal a few days before the trial and had been institutionalized on that account; that he was paid by the State to make cases

and he, therefore, had an interest in making them; and, finally, that no agent who observed the alleged sales actually saw any money change hands between Lugo and the appellant.

However damaging these circumstances may have been to the witness Lugo's credibility, still, "we have repeatedly held that the test to determine whether a witness is an accomplice is whether the witness could be informed against for the same crime which the defendant stands accused." State v. Sims, 99 Ariz. 302, 303, 306, 409 P.2d 17, 20. One paid by the State for the purpose of obtaining evidence of the criminal activities of others is not an accomplice to their acts. We said, in State v. Moraga, 98 Ariz. 195, 403 P.2d 289:

"The law is clear that testimony of an informer does not have to be corroborated." 98 Ariz., at 198, 403 P.2d, at 292.

Appellant's fifth assignment of error is that his case was substantially prejudiced by Lugo's testimony that two other agents were killed because they had refused to take a "fix". The pertinent portion of Lugo's testimony is set forth as follows:

"Q Now you say that some of these or most of these pushers, I believe you testified on cross-examination that you had to take a fix in their presence to get their confidence; is that right?

"A Yes, sir.

"Q What do you mean by that?

"A Well, if I hadn't, sir, they wouldn't have sold to me otherwise, if I hadn't used in front of them.

"Q Did you ever refuse to take a fix in front of some of them?

"A No, I couldn't, I couldn't take that chance.

"Q What do you mean you couldn't take that chance?

"A Well, two guys got killed in Phoenix because they did that."

A timely objection was made to the testimony and a motion to strike was granted by the trial court. Appellant made no motion for a mistrial. He now takes the position that a mistrial should have been declared on the court's own motion following his motion to strike. However, we said in State v. Hernandez, 96 Ariz. 28, 391 P.2d 586, that no predicate for an appeal exists where there has been a failure to request a mistrial. A defendant may not remain silent with a view to awaiting the outcome of the trial, holding a motion for mistrial in reserve in the event of an unfavorable verdict.

By his final assignment of error, appellant asserts that he was unduly restricted in his right to cross-examine the witness Lugo. Appellant was attempting to impeach the credibility of Lugo by showing that he did not receive a predetermined

salary but was compensated only for cases that he had actually "made" and thus he had an interest in making cases against others. Defense counsel asked the following questions:

"Q You testified just a few minutes ago, Mr. Lugo, that down here in Tucson you received money for cases that were not completed or not made?

"A That's right.

"Q Tell us one."

An objection was made to the last question on the ground that the information sought to be elicited would provide the names of potential narcotic pushers in the Tucson area. Appellant made this offer of proof:

"I now have in the record here, what I was trying to prove was that the only monies he received are on these cases here and which are all completed cases. Now he [Lugo] has in explanation said that these others were included in here. Well, this, of course, is his explanation, which is perfectly all right, if the jury is willing—my record says on the face this shows very clearly it isn't so. He is impeached by the evidence already in the record, and all I want to do is make it clear. That is why I argued to the Court this is already something before the Court. I wasn't trying to bring anything new. Just merely to clarify it."

The cases referred to were a series of receipts showing money paid to Lugo by the Department of Liquor Licenses and Control. Each receipt recited that the money paid was for evidence in a particular case. Since the receipts substantially accounted for the full amount of compensation which Lugo claimed to have received, and since each of the cases designated on the receipts were completed cases, that is, completed in the sense that sufficient evidence had been collected to charge the individual with a crime in that particular case, the inference was that Lugo was paid only for cases he actually "made" and therefore that he did have an interest in making them.

We find no prejudicial error in the court's sustaining the objection when by the appellant's avowal the purpose of the question was merely to clarify evidence which was already before the jury in the form of the receipts. The confidential information sought would have served only a cumulative function, to prove again what had already been proved, that Lugo had not been paid for cases which he was unable to make. The point in dispute was thoroughly presented. 53 Am.Jur. 94, Trial, § 106.

■ Appellant further asserts error arising out of the examination of Cleveland, Lugo's supervisor, concerning the foregoing receipts. Cleveland was asked if the names on that exhibit were not names of "pushers"

(sellers) of narcotics in Tucson. The witness replied in the affirmative. Defense counsel, in cross-examination, asked the witness if in fact one of the names appearing on one of the receipts had not been acquitted by a jury of selling narcotics. The prosecution objected and the objection was sustained. Appellant urges that since his name appeared on the exhibit, and the witness had classified all names appearing thereon as pushers, the effect of this testimony was, in the words of appellant, "to amplify the likelihood of defendant's guilt by improperly showing that all others in his 'class' are pushers * * *."

However, we think that the jury was fully apprised that Cleveland's answer was no more than a personal opinion. He was asked, on redirect examination:

"Q In reference to these people that we are talking about that are on these records that on cross-examination you said you—it was your opinion that they were pushers, is that right?

"A That's correct, sir."

Any prejudice arising out of the foregoing testimony of Agent Cleveland is so minimal as to be inconsequential.

Judgment affirmed.

UDALL and McFARLAND, JJ., concurring.