UNITED STATES of America ex rel. Thomas LEMON, Petitioner-Appellant,

v.

Frank PATE, Warden, Respondent-Appellee.

No. 17933.

United States Court of Appeals, Seventh Circuit.

June 26, 1970.

James Haddad, Chicago, Ill., for appellant.

Thomas J. Immel, Asst. Atty. Gen., Warren K. Smoot, William J. Scott, Atty. Gen. of State of Illinois, Chicago, Ill., Joel M. Flaum, Asst. Atty. Gen., of counsel, for appellee.

Before MAJOR and HASTINGS, Senior Circuit Judges, and CUMMINGS, Circuit Judge.

MAJOR, Senior Circuit Judge.

Thomas Lemon (petitioner) was charged by indictment in the State Court with the sale of a narcotic drug in violation of the Illinois statutes. He was represented by court-appointed counsel (the Public Defender of Cook County), waived trial by jury and, after trial, was found guilty by the court and sentenced to the Illinois penitentiary for a minimum of ten and a maximum of twelve years (ten years was the minimum mandatory sentence in Illinois), where he is now confined.

Upon Lemon's appeal the conviction was affirmed by the Illinois Appellate Court. People v. Lemon, 70 Ill.App.2d 413, 218 N.E.2d 8. Other proceedings have been employed in attacking the judgment, which we need not relate as no question is raised here but that he exhausted any remedies provided by the State.

The instant proceeding originated by means of a petition for the issuance of a writ of habeas corpus filed in the United States District Court for the Northern District of Illinois, to which was attached the official record of the Cook County trial which had resulted in his conviction. On August 19, 1969, the District Court rendered its memorandum opinion and denied the issuance of the writ. From this order the appeal comes to this court.

At the State Court trial one of the witnesses was Roy Carter, an informer, who admitted on cross-examination that (1) he was a narcotics addict, (2) he had been convicted of possession of narcotics, (3) he had administered to himself a single dosage of narcotics on October 15, 1964, prior to meeting with the police officers, and (4) he had used narcotics on the day of the trial sometime prior to his testimony.

Petitioner on brief here states the issues for review as follows:

"1. Was the Relator denied Sixth and Fourteenth Amendment rights when at his trial no hearing was held to determine the competency of a witness who was a habitual user of narcotics, who had used narcotics just prior to the alleged crime, and who had administered narcotics to himself shortly before taking the witness stand?

"2. Was Due Process denied where the State's chief witness, an addict-informer who used drugs on the day of the transaction, was permitted to flout State and Federal narcotic laws and to testify while under the influence of a narcotic drug?"

We note that in the numerous proceedings initiated by petitioner in attacking the judgment of conviction, he makes here for the first time the contention that his constitutional rights were violated by reason of the trial judge's failure to conduct a *voir dire* examination to determine his competency to testify. No objection was made by his counsel on that ground. Neither was such an issue raised on his appeal to the Illinois Appellate Court.

Mr. James B. Haddad, court-appointed counsel, with much effort and research has furnished us an interesting treatise on the ill effects produced by the use of narcotics, particularly as they affect the mind of the user and his ability to tell the truth as a witness. We appreciate

his service, but we are not persuaded that his argument on the facts of this case can be sustained.

Petitioner on brief points out numerous discrepancies in the testimony of Carter which it is argued should have alerted the trial court to the necessity of conducting a competency hearing. We have read all of the testimony heard by the trial judge, including that of Carter, and any discrepancies shown were of little if any consequence. In fact, a mere reading of Carter's testimony, corroborated as it was by other witnesses, makes it plain that there was no reason for the court to interrupt the hearing for the purpose of conducting a competency hearing.

Perhaps it is of some relevancy to state the facts heard by the trial court. On October 15, 1964, Carter met Chicago police officers Craig, Sullivan and Nadile at approximately 1:30 p.m., in front of Carter's apartment residence. After a brief conversation, they proceeded to his apartment, where Carter was stripped and searched in preparation for a controlled narcotics purchase. The officers found neither money nor narcotics on the person of Carter. Carter and the three officers then went to the lobby of the apartment where Carter held a brief phone conversation *with defendant Lemon*, after which Carter and the three officers entered the unmarked squad car. At that time Carter was given $44.00 of prerecorded money received by the officers from the 11th District Contingency Fund, and they drove to the vicinity of 16th and Keeler Avenue, Chicago.

At 16th and Keeler, officer Craig and Carter removed themselves from the squad car, officers Sullivan and Nadile remaining in the car. Carter stood at the corner of 16th and Keeler, Craig positioned himself in the middle of the 1500 block of South Keeler, and the squad car was moved to a safe distance. Defendant Lemon approached Carter at the corner of 16th and Keeler

in a gray 1953 Oldsmobile. There was a brief conversation between Carter and Lemon *in which Lemon instructed Carter to proceed to the vicinity of 16th and Tripp Avenue, Chicago*. After a brief conversation with the officers, Carter proceeded to 16th and Tripp Avenue where he met Lemon standing in the doorway of a garage at 4236 West 16th Street, Chicago. At the doorway to the garage, Carter, within full view of officer Craig, purchased a tinfoil package of heroin *from Lemon for $44.00* (the prerecorded funds). Carter, after handing the tinfoil package of heroin to officer Craig, on a prearranged signal directed officers Sullivan and Craig to the doorway of the garage where they arrested Lemon, searched him, and found the $44.00.[1]

We have read the many authorities called to our attention which supposedly are relevant to the issues for decision, and reference to a few will suffice. In People v. Dixon, 22 Ill.2d 513, 177 N.E. 2d 224, relied upon by petitioner, the Illinois Supreme Court affirmed a conviction for the sale of narcotics on facts quite similar to those here. In that case the informer was an addict and prior to the trial had been committed to a state hospital for a 90-day treatment for her addiction. She was brought from the hospital and permitted to testify, over defendant's objection that her addiction raised a presumption that she was incompetent to testify. The court stated (page 515, 177 N.E.2d p. 225):

"The test of the competency of a witness is one of intelligence and understanding, (People v. Mueller, 2 Ill.2d 311, 118 N.E.2d 1,) and, in the absence of statute, one mentally affected or ill is not incompetent if he understands the nature of an oath, and has sufficient mental power to give a correct account of what he has seen and heard. People v. Enright, 256 Ill. 221, 99 N.E. 936; see: Wigmore on

---

1. All of the above facts other than the portions italicized were testified to by officer Craig, corroborated in the main by officer Nadile, and even without Carter's testimony would have been sufficient to sustain a conviction.

Evidence, 2 ed. sec. 501. As to narcotics addicts, a habitual user of drugs is not rendered incompetent unless his mental capacity is impaired to such an extent that he cannot meet the qualifications of a witness. [Citing cases.] If a witness has the capacity to observe, recollect and communicate he is competent, and his mental deficiency is considered only insofar as it affects the credit to be given his testimony."

The court in Dixon placed much reliance upon the corroborating testimony of police officers, as did the trial court in the instant case. True, in Dixon, on objection by the defendant, a preliminary inquiry was conducted as to the competency of the addict as a witness; in the instant case, as shown, no such objection was made. In the instant case the transcript reveals that Carter was subjected to a vigorous cross-examination and that he was an alert witness. The answers which he gave, corroborated by the police officers on the main aspects of the case, demonstrate that his mental capacity was such as to qualify him as a witness. The fact that there were some minor discrepancies in his testimony does not militate against this conclusion.

In Brown et al. v. American Nat. Bank, 197 F.2d 911, 914 (CA-10), the court stated:

"In the trial of a case without a jury, it is the province and function of the trial court to observe the witnesses while testifying, to judge their qualifications, to appraise their credibility, to determine the weight to be given to their testimony, to draw inferences from the facts established, and to resolve conflicts in the evidence. And a finding of fact made by the trial court will not be disturbed on appeal unless it is clearly erroneous. [Citing cases.]"

In Stephan v. United States, 133 F.2d 87, 95 (CA-6), the court in response to an attack made upon the competency of a government witness stated:

"When a witness takes the stand to testify, the law presumes that he is a competent witness and incompetency must be shown by the party objecting to him."

In United States v. Tom, 340 F.2d 127 (CA-2), in a prosecution for violation of the narcotic laws, a question was raised as to the competency of the defendant who was taking narcotics at the time of the trial. The trial court from what it observed of the defendant as a witness concluded that he was competent. The Court of Appeals in affirming the judgment stated (page 127):

"But the record does not show, and we have no reason to believe, that the use of narcotics *per se* renders a defendant incompetent to stand trial. Whether it had such an effect in this case was an issue of fact, as to which the petitioner had the burden of proof. [Citing cases.]"

In Wilson v. United States, 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728, the defendant was a witness in her own behalf and the government was permitted to cross-examine as to her habits with reference to the use of narcotics. The Supreme Court rejected the contention that this was improper cross-examination as it "had a material bearing upon her reliability as a witness."

Congress in its provisions for Commitment and Rehabilitation of Narcotic Addicts appears to recognize that in a criminal case proof of addiction is relevant to credibility rather than competency. Title 28 U.S.C.A. Sec. 2904, referring to the determination and commitment for narcotic addiction, provides:

"They shall not be used against the examined individual in any criminal proceeding except that the fact that he is a narcotic addict may be elicited on his cross-examination as bearing on his credibility as a witness."

Petitioner places great reliance upon Pate, Warden v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and Hansford v. United States, 124 U.S.App.D.C.

387, 365 F.2d 920. In Hansford, the court in reversing a narcotic conviction stated (page 923):

> "We believe the record in this case demonstrates, as did that in Pate v. Robinson, a sufficient likelihood of incompetence to have imposed on the trial court a duty to inquire into appellant's competency. This is not, of course, to say that a defendant under the influence of narcotics is necessarily incompetent. Narcotic use does not invariably produce an acute brain syndrome, nor is every syndrome of the same degree of severity. The effects of narcotic use will vary depending on the amount of drugs taken, the degree of tolerance developed by the individual, and the idiosyncratic reaction of the person to the drugs. For this very reason, only by a hearing can it be determined whether any particular defendant is incompetent because of his use of drugs.

> "We also believe that a competency hearing is constitutionally required if it appears that a defendant may be suffering from withdrawal symptoms during trial."

█ In both Hansford and Robinson it was held that under the facts disclosed the trial court had a duty to inquire into the defendant's competency to stand trial. Without going into detail, it is sufficient to state that a reading of those cases reveals that their facts are so widely different from those here as to be of no benefit to petitioner. In contrast to those cases, the trial judge here had the opportunity to observe Carter's physical appearance, audible articulation and continuity of testimony, and, most important, to hear the corroboration of his testimony by other witnesses. The court had ample opportunity to consider the competency of the witness as the trial progressed and must have been satisfied in that respect. In our judgment, the fact that Carter was an addict was a matter to be considered in connection with his credibility and the weight which should be given his testimony but not his competency.

█ Finally, petitioner argues that the imposition of a lengthy prison sentence based upon a conviction obtained under the circumstances is such as to shock the conscience and be violative of the Due Process Clause of the Constitution. The basic concept of this contention is that petitioner and Carter, the informer, were both violators of the same law, and while petitioner received a long prison sentence the informer was not punished. Even though the argument has some appeal it must be rejected. On petitioner's conviction the trial court could not have imposed a sentence less than that required by Illinois law. Even though the use of an informer by law enforcement officers appears in many instances to be a nefarious business, such use has been commonly approved by the courts as a necessary mechanism to combat law violations. The door on this phase of petitioner's contention has been closed.

The order denying the petition for habeas corpus and dismissing the cause is

Affirmed.