ANTHONY FOX, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT

No. 6455

December 2, 1971                    491 P.2d 35

---

*Robert G. Legakes,* Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, of Carson City; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

A jury found Appellant Anthony Fox guilty of the unlawful sale of narcotics. He seeks reversal of his judgment of conviction on the ground that the State's two leading witnesses— Verne Ray Boley, Jr., and his wife, Reiane Boley—are heroin addicts and that they were under the influence of heroin when they gave their testimony to the jury. The sole specification of error reads:

"The testimony of the two key witnesses was incompetent and inadmissible because they were admitted heroin addicts and because they were under the influence of heroin at the time of trial."

Fox failed, however, to challenge, by proper motion during the trial, Reiane's testimony. The appeal is therefore limited to a determination of whether the district judge committed

reversible error in permitting Verne's testimony to stand. Cross v. State, 85 Nev. 580, 460 P.2d 151 (1969); Cranford v. State, 76 Nev. 113, 349 P.2d 1051 (1960).

Verne Ray Boley, Jr., has a long history of narcotics addiction that stretches over a period of 10 or 11 years. In his testimony before the jury, Boley admitted taking heroin at the scene of the controlled purchase that was the basis for the State's charge against Appellant Fox. Boley also admitted taking heroin the evening prior to the day he gave his testimony before the jury. He claimed, however, that he had no remaining effect from the heroin at the time he testified. At this point in the trial, appellant's counsel moved the court to strike Boley's testimony as being incompetent because Boley was under the influence of heroin. The jury was properly excused, and the court examined the witness, Boley, who stated that, while he had some difficulty with times and dates, he remembered the sale in question. During this examination, appellant's counsel asked the court for an order requiring the witness to submit to a physical examination by a physician to determine whether Boley was under the influence of heroin. After extensive examination by counsel and the district judge, the motion to strike Boley's testimony was denied, and also the motion seeking his physical examination.

Questions of the competency of witnesses in criminal trials must be determined in accordance with the general principle enunciated in NRS 175.221, subsection 2:

"The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when otherwise provided by statute, by the principles of the common law as they may be interpreted by the courts of the State of Nevada in the light of reason and experience."

As this court said in Shuff v. State, 86 Nev. 736, 738, 476 P.2d 22, 24 (1970):

"When the competency of any witness has been questioned, it is within the discretion of the trial court to consider factors relative to qualification and to determine if such person is competent to testify."

In Crowe v. State, 84 Nev. 358, 441 P.2d 90 (1968), this court held that the testimony of a single police informer was sufficient to sustain a conviction for the sale of narcotics. The court, in so holding, ruled that reliance upon the testimony of the informer, who was also a narcotics user, was a matter of credibility and thus within the province of the jury. In Lujan v. State, 85 Nev. 16, 18, 449 P.2d 244, 245 (1969), we held:

". . . Even if Alexander were an addict, which the lower court found he was not, the uncorroborated testimony of one addict, if believed by the jury, will sustain a conviction. [Citations omitted.]"

"A witness cannot be excluded on the ground that he is a drug addict unless it appears that he was so under the influence of a drug that he was not able to observe what occurred or that his intellect was unbalanced." (Footnote omitted.) 3 Wharton Cr. Evid. § 758 (12th ed. 1955).

While this court has not ruled on the admissibility of the testimony of an addict-witness who is found to be under the influence of narcotics when testifying, other jurisdictions have considered the problem. In State v. White, 39 P. 160, 161 (Wash. 1895), the Supreme Court of Washington considered the testimony of a witness who was "a confessed opium consumer, who admitted that he was under the influence of opium both at the time of the occurrences to which he testified, and when he was on the witness stand." The court approved the admission by the trial court of the witness's testimony, noting, however, that such testimony was unreliable and that juries should be carefully cautioned regarding the credence to be given such testimony.

In State v. Ballesteros, 413 P.2d 739 (Ariz. 1966), the appellant, who had been convicted of the illegal sale of narcotics, appealed on the ground that the trial court erred in failing to require the witness, an admitted addict, to undergo a chemical test to determine whether he was under the influence of narcotics at the time of trial. In that case, the court ruled, 413 P.2d at 741, that "being under the influence of narcotics does not necessarily disqualify a witness from testifying." The court upheld the conviction because the chemical test requested would have indicated only the presence of narcotics. A positive indication of the presence of narcotics would still leave for determination the question of admissibility. As the court said, 413 P.2d at 741–742:

". . . If the trial judge had ordered the witness to submit to a Nalline test the question of competency would still have remained to be determined. Here, the trial judge was satisfied from personal observation that the witness was capable of comprehending the significance of questions addressed to him and of responding in a lucid manner. . . ."

United States ex rel. Lemon v. Pate, 427 F.2d 1010 (7th Cir. 1970), stemmed from a bench trial conviction of the sale of a narcotic drug in violation of state law. The case came

before the United States Court of Appeals from the denial of a writ of habeas corpus filed in the United States District Court. One of the witnesses at the state trial was an informer, an addict who had been convicted of possession of narcotics. He had taken narcotics on the day of the controlled purchase and had used narcotics on the day of the trial some time prior to testifying (facts similar to the instant case). The petitioner was seeking relief from the federal court under the Sixth and Fourteenth Amendments because no hearing took place at the state trial with regard to the competency of the witness. (The district judge in this case did conduct such a hearing.) The circuit court noted that no objection to competency was made at the state level. (There was such an objection in the case at bar.) The United States Court of Appeals upheld the trial judge's exercise of his discretion in allowing testimony of the witness. In its opinion, the court noted, 427 F.2d at 1013, facts that resemble those in the case before us: "[T]he transcript reveals that Carter [the informer] was subjected to a vigorous cross-examination and that he was an alert witness."

In the case we are here considering, Trial Judge William R. Morse made the following explanation for permitting Boley's testimony to stand:

"THE COURT: Record will show that in the court's opinion . . . the witness didn't appear to me to be high on narcotics. He handled himself pretty well under cross examination, in fact, very well on expert cross examination and as many times as you [defense counsel] tried to cross him up and throw rapid-fire questions at the man, he did fairly well. . . .

". . .

"THE COURT: In fact, very good, and handled himself in a manner that some people who . . . hadn't had a drug can't.

". . .

"THE COURT: . . . I see nothing in any statute that says that the witness . . . Mr. Boley is incompetent to testify, and it's up to the jury to determine his credibility and . . . they saw him, saw his actions, saw his demeanor."

The district judge gave defense counsel wide latitude in his cross-examination of Witness Boley, and he also gave a cautionary instruction to the jury regarding the credibility and weight to be given the testimony of an informer or an addict. Wide latitude on cross-examination and cautionary instructions are necessary in situations such as faced the court below. Cf. Crowe v. State, *supra.*

We conclude that the district judge did not abuse his discretion in refusing to order a physical examination of witness Boley and that under the facts presented it was proper to permit Boley's testimony to stand.

The judgment of conviction is affirmed.

ZENOFF, C. J., BATJER and THOMPSON, JJ., concur.

GUNDERSON, J., concurring:

I agree the judgment and sentence should be affirmed; for it appears, from the entire transcript, that even had a medical examination shown Boley to be thoroughly under the influence of narcotics when he testified, the evidence of appellant's guilt would nonetheless have been overwhelming. Thus, it appears to me that any error by the trial court, in refusing to grant appellant's motion for a medical examination of witness Boley, may be deemed harmless.

The testimony of two police officers, Patrick Stevens and Michael Mouliot, establishes that at about 6:30 p.m. on the night in question, Mr. and Mrs. Boley were at the Las Vegas Police Department. At that time, neither Boley appeared "high." The officers observed as Boley dialed appellant's phone number, and asked for "Anthony." Listening on an extension phone, Officer Stevens heard appellant Anthony Fox, whose voice he recognized, come on the line and agree to meet the Boleys with narcotics at the filling station at "F" and Bonanza streets. Officer Mouliot went through Boley's pockets to ascertain that he was not in possession of narcotics; then, the officers followed the Boleys to the place where Fox had agreed to meet them. Watching through binoculars, the officers observed appellant arrive as agreed, go into the men's room with Mr. and Mrs. Boley, and remain there for sufficient time to "fix" them. When the Boleys emerged, the officers kept them under surveillance, and back at the police station, Boley removed narcotics from one of his pockets, which Officer Mouliot had searched before the meeting with appellant. Then, Boley appeared to be "high" on drugs.

I have grave reservations about language in certain decisions of this court, which might be taken to suggest that uncorroborated testimony of an addict-informer like Verne Boley, however depraved and however self-interested, is sufficient evidence upon which to incarcerate other men for substantial portions of their lives. Cf. Tellis v. State, 84 Nev. 587, 445 P.2d 938 (1968); cf. Lujan v. State, 85 Nev. 16, 449 P.2d 244 (1969). I suggest there are situations in which the testimony of people

like Boley, alone, does not constitute proof beyond a reasonable doubt. Cf. People v. Bazemore, 182 N.E.2d 649 (Ill. 1962). However, the instant case was not "one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one." Id., at 651. On the contrary, the instant case shows that respectable police work can provide corroborative evidence, rendering it unnecessary to hazard the danger of convictions grounded solely on the testimony of addict-informers.

Here, while the controls imposed to obtain corroboration of the Boleys' testimony may not have been ideal, they resulted in such proof of appellant's guilt that the jury was required to rely only minimally on the Boleys' testimony. It is impossible to see how a medical examination of Verne Boley would have altered the outcome of the case.