[Criminal No. 716.  Filed March 3, 1930.]

[285 Pac. 274.]

LEO GREVE, Appellant, v. STATE, Respondent.

Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Riney B. Salmon, Assistant Attorney General, and Mr. George T. Wilson, County Attorney, for the State.

ROSS, J.—Leo Greve was convicted of attempting to rob one A. Tate and sentenced to the state prison for not less than three and not more than seven years. He appeals and assigns errors on the admission of evidence and an instruction of the court.

Tate testified that he and Eveline Garcia had motored from Phoenix to Mountain View Park on the night of August 17th, 1929, and, while parked out there, at between 11 and 1 o'clock, he observed a Ford roadster coming in his direction followed by a Chrysler coupe without lights; that after they had passed him the Chrysler turned around, switched on its lights, and drove very close and stopped; that the occupant got out of the car, stuck a gun in his stomach, told him to turn around and then went through his pockets; that he got no money because he had dropped what cash he had on the ground; that the robber told him to walk down on the desert and he did so; that the girl was then searched for money or valuables. He further testified that the Chrysler coupe was a two-tone color, dark blue and probably light blue; that it had no tail-light; that the robber was unmasked; that after defendant was arrested, about August 22d, witness went to the jail and out of five or ten prisoners identified defendant as the man who attempted to rob him; that he at the same time saw defendant's car in the jail yard, and that it looked like the car of the man who held him up.

Eveline Garcia corroborated Tate's testimony as to the movements of the Chrysler car and the hold-up. She said:

"I know he (defendant) is the one, because I could see his face, because he was stand near myself."

Robert Kilbourne and Virginia Prather, who at the time of the trial had become husband and wife, were the occupants of the Ford roadster that passed Tate's car just ahead of the Chrysler coupe. Immediately after Tate and Miss Garcia were held up the robber resumed his pursuit of the Ford roadster, which had stopped and parked a short distance away. He left his car and at the point of a revolver proceeded to hold up and search Kilbourne. At that time he was masked. These witnesses saw defendant after he was arrested, and both testified that he looked like the man who robbed them or had the same general appearance. They also examined defendant's car and said it was the same car in general appearance. When Kilbourne was questioned concerning what happened to him and Miss Prather, defendant interposed this objection: "We object, Your Honor, because we are not trying the defendant for anything that happened to him (Kilbourne)." This objection was sustained, whereupon the county attorney asked the question: "Were you robbed on that night?" And received the answer: "Yes, sir." This was objected to and motion made to strike. The county attorney stating that it was for the purpose of identifying the defendant, the court overruled the objection, and the witness answered that he was robbed.

Ted O'Malley testified that on the night of August 5th, near midnight, he and his wife were held up and robbed on west Palm Lane in Phoenix by a lone highwayman driving a Chrysler coupe. He said he thought defendant's car was the car used by the person who robbed him; that he was fairly sure. He testified that he went to the jail to identify defendant as the man who robbed him. To this there

was an objection by defendant on the ground that there was "No tendency whatever even to offer—no testimony to show that the same man that was down here was the man that robbed him, no connection whatever." On the statement of the county attorney that he was "trying to make the connection now" the objection was overruled, and witness testified that he could not identify defendant as the person who robbed him.

Cliff Van Doren testified that on the night of August 16th, at about 11 o'clock, he and a companion were motoring out near the "Hole-in-the-Rock" and a masked man held him up and robbed him. When asked who it was who robbed him he said the defendant. The objection to this testimony was that it was too remote for identification purposes.

The defendant testified that on the night of August 17th he was not in the vicinity of the scene of the robbery, but was at Mesa and in that vicinity in the company of a girl friend from 8 to about 11 o'clock. This testimony was corroborated by his girl friend and her mother. That from a short time after 11 o'clock on to about 3 A. M. he was with three other persons, a young man and two young women, motoring on the desert east of Mesa and near the "Hole-in-the-Rock." Two of such companions corroborated this testimony, the third being a temporary visitor from Indiana had returned home before the trial. The keeper of a refreshment stand and service station at Desert Wells, several miles east of Mesa, testified that defendant and his three companions were at his place at about 12 o'clock at night. This evidence, if believed, established a perfect alibi.

Defendant for some reason or other was not asked about the O'Malley holdup or Van Doren holdup. The testimony of these two witnesses was left uncontradicted.

The assignments of error are as follows:

"I.   The trial court erred in permitting the witnesses Kilbourne and Mrs. Kilbourne, O'Malley and Van Doren to testify for the purpose of showing identity and same was highly prejudicial.

"II.   The court erred in permitting said witnesses to testify for the purpose of showing intent and the same was highly prejudicial.

"III.   The court erred in giving the following instruction: 'There was also evidence of a robbery on a previous date, on the date before the alleged robbery involved in this case.   That evidence was received and may be considered by you only in so far as it may tend to prove an intent to commit the offense alleged in the information in this specific case,' and the same was highly prejudicial.

"IV.   The court erred in failing to give any instruction as to the purpose for which the proof pertaining to the O'Malley robbery might be put in passing upon the defendant's guilt or innocence.

"V.   The verdict of the jury was contrary to the law, to the evidence, and to the law and the evidence."

The rule with reference to the admissibility of evidence of crimes other than the one on which a defendant is being tried is well established.   Such evidence falls within exceptions to the general rule.   It is said in 16 Corpus Juris., 586, section 1132:

"The general rule is that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible."

This rule has been recognized and followed by this court in a number of cases.   *Territory* v. *Youree,* 3 Ariz. 346, 29 Pac. 894; *Crowell* v. *State,* 15 Ariz. 66, 136 Pac. 279; *Wilson* v. *State,* 21 Ariz. 620, 193 Pac. 301; *Quen Guey* v. *State,* 20 Ariz. 363, 181 Pac. 175, 177; *Thompson* v. *State,* 21 Ariz. 268, 187 Pac. 579;

*Walker* v. *State,* 23 Ariz. 59, 201 Pac. 398; *Dorsey* v. *State,* 25 Ariz. 139, 213 Pac. 1011; *Allen* v. *State,* 26 Ariz. 317, 225 Pac. 332.

If evidence of another crime tends directly to prove a defendant guilty of the particular crime for which he is being tried, it is relevant. The materiality of such evidence may be to prove identity, or knowledge, or intent, or malice, or motive, or plan, or system. The nature of the offense is sometimes, for example, such that the accused may claim he had no knowledge that his act was wrong, as where he is charged with receiving stolen property, in which case to prove knowledge it may be shown that on other occasions he had received stolen property. *Cummings* v. *State,* 20 Ariz. 176, 178 Pac. 776. The present case involves, not proof of knowledge nor motive nor malice nor intent, for whoever it was that attempted to rob Tate indicated by his acts and the circumstances that he had all these. Nor does it involve plan or system, in the common acceptation of those terms.

While Tate and Eveline Garcia quite positively identified the defendant as the person who held them up, that would not make the testimony of the Kilbournes incompetent for the reason that it appears that both were robbed by the same person, one immediately after the other. Indeed, it is reasonably certain that the robber had before arriving at the place where Tate was parked picked out the occupants of the Ford roadster as prey and was stalking the Ford at the time he came upon and attempted to rob Tate. The two offenses were so closely interrelated in time, place, and circumstance as to almost constitute a single transaction. Assuming that the objection to the testimony of the Kilbournes was sufficiently specific, we think the court very properly overruled it and allowed them to testify that defendant resembled the person who robbed them, and that

the automobile he was driving in general appearance was like defendant's, for the purpose of identifying him as the person who just a moment before had attempted to rob Tate.

The evidence as to the O'Malley holdup on the night of August the 5th was not competent, for the reason that neither the car nor the person in it was sufficiently identified. O'Malley was not sure that it was defendant's car and totally failed to identify defendant as the person who robbed him.

This case in its facts is in all essentials like the case of *Dorsey* v. *State, supra,* in which we held that it was error to admit evidence such as O'Malley's for identification of the robber. The objection to this testimony lacks clarity, to say the least, but we think the court and county attorney understood it to mean that O'Malley could not swear that the man who robbed him on August 5th was the defendant, or that such person was driving defendant's car. This is evident from the avowal of the county attorney that he was trying to connect defendant with the two robberies. No such connection was made. This testimony, under the general rule above stated, was incompetent, and the court erred in permitting it to go to the jury over the defendant's objection.

While the evidence is uncontradicted that defendant robbed Van Doren on the night of the 16th of August, there is absolutely nothing in the circumstances of such holdup that tends to identify defendant as the person who robbed Tate on the night of the 17th. If defendant robbed Van Doren, it is not shown that he was riding in an automobile, or that he used a gun or any other means to put Van Doren in fear. Nothing peculiar in appearance or act or accompanying circumstance was shown that corresponded with the robbery of Tate on the night of the 17th. While the objection to this testimony does

not enlarge or amplify the ground therefor, it does specifically name such ground as being too remote for identification. It is apparent that the evidence of the robbery of Van Doren could have been offered for no other purpose than to identify defendant as the person who robbed Tate. We think defendant put his finger on the proper objection to this testimony, and that such objection should have been sustained.

It is well said by Mr. Justice BAKER in *Quen Guey* v. *State, supra:*

"That a person has committed one crime has no direct tendency to show he has committed another similar crime, which had no connection with the first, and a person charged with one offense cannot be expected to come to court prepared to meet the charge of another. If the doing of one wrongful act shall be deemed evidence to prove the doing of another of a similar character, which has no connection with the first, issues would be multiplied indefinitely, without previous notice to the defendant, and greatly to the distraction of the jury.

" 'The general rule is that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime is wholly excluded.' *People* v. *Sharp,* 107 N. Y. 427, 1 Am. St. Rep. 851, 14 N. E. 319.''

The instruction of which complaint is made is erroneous. It is predicated upon the false assumption that evidence of a previous robbery would prove an intent to commit the offense with which defendant was charged. This is not a correct statement of the law under the facts in this case. It is said in *People* v. *Hobbs,* 297 Ill. 399, 130 N. E. 779, 782:

"The general rule is that proof of any other offense than that for which the accused is being tried, although of a similar character, is inadmissible.

Where the intent is not required to be specifically proved, or from the nature of the offense under investigation proof of its commission as charged necessarily establishes the criminal intent, or the intent is a necessary conclusion from the act done, evidence of the perpetration of other like offenses should not be admitted."

See, also, *Holzmacher* v. *United States,* (C. C. A.) 266 Fed. 979.

In the fourth assignment complaint is made of the failure of the court to instruct on a particular point. If the defendant wished an instruction on that point, it was his duty to request it.

It is unnecessary to pass upon the fifth assignment.

The judgment is reversed and the cause remanded, with directions that defendant be granted a new trial.

LOCKWOOD, C. J., and McALISTER, J., concur.