496 P.2d 628

STATE of Arizona, Appellee,

v.

Rutherford Sean HAYS, Appellant.

No. I CA–CR 398.

Court of Appeals of Arizona,
Division 1.

May 2, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Wolfram & Trujillo, by Donald E. Wolfram, Phoenix, for appellant.

HATHAWAY, Judge.

Defendant, Rutherford S. Hays, was charged with and found guilty of four counts of illegal possession of drugs.[1] The charges arose from events occurring on 3 September 1969 in Phoenix, Arizona. On that evening two officers of the Phoenix Police went to a residence on North 20th Street to serve an arrest warrant for illegal possession of marijuana on Miss Susan Pryde. Dressed in street clothes, the officers unsuccessfully tried to purchase some marijuana from Miss Pryde. They then informed her that she was under arrest pursuant to the warrant and followed her into the living room so that she could obtain her shoes before going to the police station. The defendant was sitting in the living room watching television. While Miss Pryde was putting on her shoes, one officer noticed a hand-rolled cigarette, the contents not appearing to be tobacco, lying in an ashtray near the television set. Upon inspecting the cigarette, the officer determined that it contained marijuana and announced that both Miss Pryde and the defendant were under arrest for possession of marijuana. During this time other officers who had been stationed outside the house entered the room. Two officers standing near defendant observed a knife, an automatic pistol and a loaded ammunition clip lying on a bookcase shelf near where defendant was seated. One officer took possession of the gun and then conducted a detailed search of the bookcase. Subsequently the entire house was searched for further weapons and contraband. In various containers and boxes located on the bookshelf, the officer found what later was determined to be the drugs for which charges were entered.

At defendant's trial, the court suppressed all items seized elsewhere in the house but allowed into evidence the items which were discovered during the search of the bookcase. The court also admitted statements made by defendant after his arrest, regarding his place of residence and the location of his clothing in the dwelling on North 20th Street. Over 15 months later, on the third day of defendant's trial in the instant case, he was again charged with possession of dangerous drugs arising from a separate incident. The court allowed testimony setting forth the events surrounding the subsequent arrest to show guilty knowledge and criminal intent in the case being tried.

On appeal defendant assigns four grounds of error: (1) denying defendant's motion to suppress the evidence seized from the search of the bookcase; (2) not holding a voluntariness hearing, out of the presence of the jury, regarding the statements made by defendant as to his resi-

---

1. The respective charges included illegal possession of marijuana, a felony; illegal possession of a narcotic drug, a felony; illegal possession of secobarbitol, a misdemeanor; and, illegal possession of methamphetamine, a misdemeanor.

dence and clothing; (3) allowing into evidence testimony concerning the subsequent arrest of defendant; and, (4) denying defendant's motion to directed verdict.

■ Proceeding to defendant's first assignment of error we believe the record reveals that there was sufficient probable cause to arrest him and that a search was lawfully conducted incident to that arrest. Defendant, however, maintains that the search went beyond the scope allowable without a search warrant. He cites State v. Madden, 105 Ariz. 383, 385, 465 P.2d 363, 365 (1970) for the general rule that "[i]n all situations, searches made incident to a lawful arrest are limited by the principle that police must, whenever practicable, obtain a judicial warrant authorizing the prospective search." Setting forth the scope of permissible searches incident to a lawful arrest, the United States Supreme Court in Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969) stated:

> "A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

Despite the fact that defendant was turned away from the bookcase in the instant case, it was within easy reach and we find no violation of the principles enumerated in Chimel. Neither do we believe a different result is mandated because there was an officer stationed between the bookcase and defendant. The guidelines set forth in Chimel are meant to limit the area of a search and are not dependent upon the location of an officer in respect to the person being searched.

Defendant also complains that the evidence failed to show that the search was motivated by or limited to the objective of protection. He relies on testimony which indicates that the officers did not recall whether the defendant himself was searched or whether they seized a knife which was also on the bookcase. Admittedly, the record is not clear on this point. We find, however, nothing in Chimel which would require a search of the arrestee's person prior to a search of the immediate area of his control. As the United States Supreme Court pointed out, a gun concealed in a drawer is or can be just as dangerous as one concealed in the arrestee's clothing. Here, after having seen a gun and loaded ammunition clip on the bookcase, it was not unreasonable to undertake a search of the book case prior to searching the person of the defendant.

■ When defendant was arrested he made certain statements to the officer filling out the "booking slip." He stated his residence was that at which the drugs were found and mentioned the location of his clothing in other parts of the house. He claims the statements were prejudicial as they tended to indicate his residency at the address in question thereby evidencing constructive possession and that his request for a voluntariness hearing outside the jury's presence was improperly denied. We agree that the court improperly denied a voluntariness hearing. The record indicates that defendant raised objections and requested a hearing. The trial court apparently relied upon the uncontroverted testimony that Miranda warnings were given to defendant in overruling the objections.[2] The record also reveals that in his charge to the jury the trial judge left the question of voluntariness for the jury's determination. The Arizona Su-

---

2. It is not necessary that the officers repeat the warnings each time questioning is commenced. For example, see State v. Quinones, 105 Ariz. 380, 465 P.2d 360 (1970) where the issue before us arose and was properly disposed of by the trial judge.

preme Court in State v. Owen, 96 Ariz. 274, 276–277, 394 P.2d 206, 208 (1964) held:

"The trial judge's statement that it was for the jury to determine the question of voluntariness of a statement or confession, does not correctly state the law as enunciated in Jackson. We hold, in accord with Jackson, that in Arizona when a question is raised as to voluntariness of a statement constituting either admissions against interest, exculpatory or otherwise, or a confession, it must be resolved by the judge outside the presence of the jury. If he determines it was involuntary, it will not be admitted. If he determines it was voluntary, it may be admitted."

Voluntariness was in issue here both by counsel's request and the trial judge's charge to the jury and it was incumbent upon the court to hold a hearing and make a specific ruling. State v. Dodd, 101 Ariz. 234, 418 P.2d 571 (1966); State v. Stevenson, 101 Ariz. 254, 418 P.2d 591 (1966).

■ During the trial of this case defendant was arrested and charged with possession of secobarbitol and methamphetamine. The prosecution, over defendant's objections, presented extensive testimony pertaining to the events surrounding the subsequent arrest, the avowed purpose of which was to show guilty knowledge and criminal intent in the instant case. The trial judge in admitting the testimony relied solely upon State v. Turner, 104 Ariz. 469, 455 P.2d 443 (1969). There the court said:

"This court has allowed evidence of recent acts or crimes of the accused by the same means or similar manner before or after the commission of the crime charged which are provable for the purpose of showing scheme, plan, intent, and knowledge." 104 Ariz. at 470, 455 P.2d at 444.

■ The general rule is succinctly set forth in Dorsey v. State, 25 Ariz. 139, 143, 213 P. 1011, 1012 (1923):

"[I]n the prosecution of one accused of a particular offense, evidence showing or tending to show the commission by accused of another crime entirely distinct and independent of that for which he is on trial, even though it be a crime of the same class, is neither relevant nor admissible."

As the Arizona Supreme Court recently pointed out in State v. Moore, 108 Ariz. 215, 495 P.2d 445 (1972) abuse of this rule is a frequent cause of reversal. There are, however, many exceptions to the general rule. Evidence of another criminal act will be admitted if it directly establishes some essential element of the crime charged or has independent relevancy for some purpose other than showing a probability that the accused committed the crime for which he is on trial merely because he is of criminal character. State v. Ballesteros, 100 Ariz. 262, 413 P.2d 739 (1966).

■ Much of the confusion surrounding the admission of evidence pursuant to one of the exceptions arises from the failure to recognize that each exception serves a separate purpose. Even though the same evidence may be admissible under more than one exception the offering party must establish its independent relevancy in the particular circumstances for each purpose for which he seeks to have it admitted. C. McCormick, Law of Evidence § 157 (1954) [hereinafter, McCormick]; 2 J. Wigmore, Evidence § 300 (1940) [hereinafter, Wigmore]; see State v. Little, 87 Ariz. 295, 350 P.2d 756 (1960); State v. Moore, supra.

The court in State v. Turner, supra, relied upon State v. Chance, 92 Ariz. 351, 377 P.2d 197 (1962); State v. Francis, 91 Ariz. 219, 371 P.2d 97 (1962); and State v. Daymus, 90 Ariz. 294, 367 P.2d 647 (1961) in discussing the admissibility of other criminal acts. A close reading of those cases reveals that the first two were strictly limited to allowing evidence of another crime for purposes of identity and the third involved a continuing scheme or

plan.[3] In *Turner* the court did not rely upon any one of the noted exceptions but rather upon accused's defense of entrapment which put his state of mind into issue and supported the necessary showing of independent relevancy. A defense of entrapment is in itself sufficient for this purpose. See State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (1960).

Thus, we are confronted with the narrow question of whether evidence of a subsequent crime, in a charge of possession of a narcotic drug, may be admitted to show guilty knowledge or criminal intent. Bearing in mind that evidence of other criminal acts is not admissible unless it directly establishes an essential element of the crime charged or has independent relevancy we examine separately the exceptions upon which the state relied.

We believe that evidence of a subsequent crime cannot be used to establish knowledge in a prior instance. Proof of knowledge requires a happening or event that would probably have resulted in some sort of warning or knowledge and this warning or knowledge must probably have *led* to the knowledge in question. 2 Wigmore § 301 (1940). It simply does not logically follow that a fact shown to have been known 15 months from today establishes that the same fact was known today. See M. Udall, Arizona Law of Evidence § 115 (1960).

Intent, on the other hand, may properly be established by subsequent acts as it is based on the idea that similar results do not usually occur through abnormal causes and that the recurrence of a particular similar result tends (increasingly with each instance) to negative accident, inadvert-

ence, self-defense, good faith or other innocent mental state. 2 Wigmore §§ 302, 313 (1940). To show intent Professor Wigmore suggests only that prior or subsequent acts be "similar"[4] to the act charged and not too remote in time. 2 Wigmore §§ 302, 316 (1940). Other authorities and jurisdictions including Arizona have adopted a somewhat different approach. Over 40 years ago the Arizona Supreme Court in reversing for a new trial quoted People v. Hobbs, 297 Ill. 399, 130 N.E. 779, 782 (1921):

"The general rule is that proof of any other offense than that for which the accused is being tried, although of a similar character, is inadmissible. Where the intent is not required to be specifically proved, or from the nature of the offense under investigation proof of its commission as charged necessarily establishes the criminal intent, or the intent is a necessary conclusion from the act done, evidence of the perpetration of other like offenses should not be admitted." Greve v. State, 36 Ariz. 325, 285 P. 274 (1930).

See 1 Wharton's Criminal Evidence § 237 (R. Anderson 12th ed. 1955). In Arizona, intent is not an element of the crime of possession of drugs requiring independent proof.[5] As stated by the Arizona Supreme Court in State v. Vallejos, supra, 89 Ariz. at 80, 358 P.2d at 180 (1960):

"Ordinarily proof of the acts of possession or sale are sufficient to show intent and therefore would exclude evidence of other crimes."

See also State v. Tisnado, 105 Ariz. 23, 458 P.2d 957 (1969); Hightower v. State, 62 Ariz. 351, 158 P.2d 156 (1945).

---

3. To meet the independent relevancy requirement in showing a common scheme or plan (sale of narcotics), see State v. Little, 87 Ariz. 295, 350 P.2d 756 (1960).

4. For a discerning application of this approach, see Enriquez v. United States, 314 F.2d 703 (9th Cir. 1963).

5. For cases discussing the elements of possession of drugs and jury instructions relating thereto, see State v. Quinones, 105 Ariz. 380, 465 P.2d 360 (1970); State v. Riley, 12 Ariz.App. 336, 470 P.2d 484 (1970); State v. Urias, 8 Ariz.App. 319, 446 P.2d 18 (1968).

Thus, in Arizona, before intent may be shown from a subsequent act or crime it must be a fact in issue—a *factum probandum*. It is not, we hasten to add, essential that intent be a specific element of the charge. The issue of intent may be raised by defendant's own testimony or by the substance of his defense, see Hightower v. State, supra, at which time proper rebuttal may be made by evidence of a subsequent similar crime.

There is no showing in the case *sub judice* that defendant's intent was in issue when the state introduced evidence of the subsequent crime. The evidence was prejudicial and reversal is required.

■ We are constrained to make one additional comment. Even if questioned evidence is relevant and admitted, care must be taken to insure that it is not so outrageously prejudicial as to completely destroy its probative value. The instant case is in point. Over one-third of the state's testimony pertained to the subsequent arrest 15 months after the charges were filed in this case. Likewise, the testimony of five of the state's eight witnesses pertained to the subsequent event. Included was testimony from three police officers, a chemist and a private citizen. The unnecessary length and detail was so prejudicial in itself as to mandate a reversal. See State v. Moore, supra. The utmost caution must be exercised in delving into unnecessary detail particularly when the defendant has not yet had his day in court on the subsequent charge.

Reversed and remanded for a new trial.

KRUCKER, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12-120, subsec. E.