502 P.2d 1343

STATE of Arizona, Appellee,

v.

Daniel A. CARRILLO, Appellant.

No. 2311.

Supreme Court of Arizona,
In Banc.

Nov. 17, 1972.

Gary K. Nelson, Atty. Gen., William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

LOCKWOOD, Justice.

Defendant was charged with one count of child molesting, one count of first degree burglary and one count of aggravated assault. He was tried and convicted of all counts as charged and sentenced to not less than seven nor more than ten years on the child molesting and burglary counts and not less than four nor more than five years on the assault count. All sentences were held to run concurrently.

In August of 1970 late at night a man entered the home of Ruth W. Dana. He awoke one of her daughters, Tamara Dana, and took her from her bedroom into another room telling her to "be quiet and not to scream." Tamara recognized the man as the "apartment man" or "Danny". He "put [her] on the bed, took off his pants

and [hers] and laid on top of [her]." She testified that he touched her between the legs with his tongue and with his penis. When he left she went to the bathroom and wiped "some white stuff" off of her legs.

On the same night Tamara's sister, Charlene Dana, was awakened by someone touching her. He grabbed hold of her shoulders, placed his hands on her sides, waist and legs and said "sh-h-h, be quiet, someone might hear us." She recognized the voice as the defendant's. She asked him what he was doing to which he responded that "he was just seeing what everybody was doing." He took hold of her hand and spoke about "keeping a promise." She could not remember all of the conversation, and then he left. She then went to her mother's room crying and told her what had happened.

The following day Tamara told her mother what had happened, the police were summoned and Tamara was taken to the hospital for an examination. The doctor found "some evidence of bruising or contusion about the opening of the vagina posteriorly."

The defendant was arrested, brought to trial and convicted of the crimes as charged.

■ The first argument defendant asserts is that he was denied due process of law because the in-court identifications of him made by the victims were admitted at trial. These identifications were allegedly tainted by a prior unduly suggestive photograph identification.

The decision Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) supplies the applicable authority for photographic identifications. See also, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969), cert. denied, 397 U.S. 965, 90 S. Ct. 1000, 25 L.Ed.2d 257 (1970); State v. Branch, 108 Ariz. 351, 498 P.2d 218 (1972). For determination of whether a photographic identification is unduly suggestive:

"* * * each case must be considered on its own facts, and * * * convictions based on eyewitness identification at trial following a pretrial identification by photograph *will* be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253. (Emphasis supplied.)

In the instant case the victims named the defendant as the man who committed the crime *before* the photographic identification took place. The girls repeatedly stated that the man was the "apartment man" or "Danny". The defendant rented Ruth Dana's sole apartment. The police conducted no independent investigation but were directed to the defendant by the victims. Their motive for showing the pictures to the victims was not to suggest to them that the defendant had committed the crime but to determine who the man was that they had probable cause to arrest.

The identification procedure followed in this case is in stark contrast to the patently suggestive procedures in other decisions. See State v. Dessureault, *supra.* Although the victims were shown but one picture, that of the defendant, we hold that under the circumstances of this case the identification was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Therefore the admission of the in-court identification was proper.

■ The next argument is that the trial court was incorrect in refusing to give the following instruction.

"Competency to give testimony depends largely on intelligence and understanding rather than on attaining a certain age. But it is common knowledge that a child of tender years usually does not have the same powers of comprehension and understanding nor the same ability to observe, remember and tell what he or she has seen or heard as an older

child or person. In a child of tender years the strength and use of the imagination is frequently out of proportion to the power of the other faculties, and young children may say what is not true not from deceitfulness but simply because they have come to think or believe so, by talking or from suggestion or from imagining what has happened. So in determining what if any credit you shall give to the testimony of these children, you should give consideration to all of these matters and should consider their testimony with caution and should weigh it in the light of their tender age, mental capacity, lack of experience, and immaturity. You should guard against being influenced by sympathy for these children of tender age who were called upon to testify."

It is certainly proper to give cautionary instructions regarding the credibility of a child's testimony in a sex offense. But whether to give the requested instruction, is within the discretion of the trial judge. Land v. People, 171 Colo. 114, 465 P.2d 124 (1970).

We hold that the trial judge did not abuse its discretion in refusing to give the defendant's requested instruction. Land v. People, supra; See also State v. Boe, 143 Mont. 141, 388 P.2d 372 (1963).

■ Tamara's testimony at the hearing to determine her competency did not indicate even a modicum of incomprehension or exaggerated imagination. She proved to be a reasonably intelligent child with a vivid memory of the commission of the crime. Moreover, the requested instruction was improper because in substance it tended to confuse the question of competency with the question of credibility. The determination of competency in Arizona is made by the judge and not by the jury. See State v. Parker, 106 Ariz. 54, 470 P.2d 461 (1970).

■ The third point of contention is that the trial court erred in substituting the following instruction,

"A charge of this nature is easily made and difficult to disprove. From the nature of the case, the complaining witness and the defendant usually are the only witnesses. You should be satisfied beyond a reasonable doubt that the case is made out by the evidence and corroborating evidence, if any, before you find the defendant guilty, if you find him guilty. The law does not require, in this character of case, that the witness be supported by any other witness or corroborating circumstances, but does require that you examine the evidence with caution."

for defendant's requested instruction which stated:

"Charges such as those made against the defendant in this case are easily made and, once made, difficult to defend against, even if the person accused is innocent.

"Therefore, the law requires that you examine the testimony of the female persons named in the information with caution."

We have held that if the substance of an instruction is supplied by an instruction which was given there is no error in refusing the instruction. Macias v. State, 36 Ariz. 140, 283 P. 711 (1929). Because defendant's requested instruction was provided in content by the given instruction the court was correct in refusing defendant's instruction.

■ The next issue in dispute is whether there was sufficient evidence for conviction of aggravated assault. In the instant case the facts proved at trial were that defendant touched Charlene on her sides, on her shoulders and held her hand. It is defendant's argument that this evidence proved the crime of aggravated battery and not aggravated assault. The gist of this assertion is that touching constitutes a battery and not an assault.

This argument is a misinterpretation of the crimes of assault and battery. In the Arizona criminal law a touching does not preclude a charge of assault. The definition of assault is found in A.R.S. § 13–241, subsec. A (Supp.1972).

"An assault is an unlawful attempt, coupled with a present ability, to commit a physical injury on the person of another."

An assault is aggravated as defined in A. R.S. § 13–245, subsec. A, par. 3 (Supp. 1972):

"When committed by a male of eighteen years or more upon a female, or by a person of eighteen years or more upon a child the age of fifteen years or under."

The "unlawful attempt" element of assault in this case was accomplished by the acts of sexual touchings. This activity manifested preparation for a more violent type of injury. *Cf.* Callaghan v. State, 17 Ariz. 529, 155 P. 308 (1916).

■ Defendant also argues that the trial judge erred in refusing to permit the defendant to ask Tamara Dana the following question:

"[Are you] telling us today what the County Attorney told *you* to tell?"

during the hearing to determine her competency. The court refused the question on the ground that it was irrelevant.

The trial judge is invested with considerable discretion in determining the relevancy and admissibility of evidence. Higgins v. Arizona Savings & Loan Assoc., 90 Ariz. 55, 365 P.2d 476 (1961).

The defendant's final contention is that the trial court erred by denying defendant's requested instruction number one concerning the testimony of children. At the hearing the child was proven competent to testify and counsel was permitted to cross-examine the witness on her credibility at the trial in front of the jury. At a competency hearing such factors as the child's age, intelligence and understanding of the meaning of telling the truth are relevant. See State v. Parker, *supra*. We believe that the trial judge did not abuse his discretion in refusing the requested instruction.

The judgment is affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.