541 P.2d 1142

**STATE of Arizona, Appellee,**

v.

**Larry TUELL, Appellant.**

**No. 2988.**

Supreme Court of Arizona,
In Banc.
Oct. 27, 1975.

Bruce E. Babbitt, Atty. Gen., N. Warner Lee, Former Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Phoenix, for appellee.

Bolding, Barber, Oseran & Zavala, by Richard Oseran, Tucson, for appellant.

GORDON, Justice:

Larry Tuell was convicted by a jury of unlawful sale of narcotics in violation of A.R.S. § 36–1002.02. He appeals from the judgment of conviction and sentence thereon.

On February 18, 1974, an informant and two undercover narcotics officers went to a residence in Tucson, Arizona to buy narcotics. The informant entered the house alone, left and re-entered the house with Officer Click. The other officer remained in the car. Once in the house, the informant introduced Officer Click to a person named "Larry", the appellant, and then left the dimly lit room. The informant did, however, remain in the house. "Larry" allegedly sold three papers of heroin to the officer in exchange for $30.00. The only other occupant in the room at the time was a female.

On February 20, 1974, appellant was arrested pursuant to warrant and charged with two felony counts: Unlawful sale of narcotics on February 18, 1974, Count I; and Unlawful possession of narcotics for sale on February 20, 1974, Count II. The counts were severed for trial pursuant to Rule 13.4, R.Crim.Proc. and we are here concerned only with the conviction on Count I. Appellant raises nine assignments of error.

I

## IDENTITY OF INFORMANT

Appellant first claims that the trial court abused its discretion in refusing to order disclosure of the state's confidential in-

formant. He argues that disclosure of the informant would have a bearing on the identity of the appellant as the person who sold heroin to the officer. This is for the reason that an inconsistency existed as to the correct description of the appellant. In his departmental report, Officer Click described "Larry" as a white male, approximately 25 to 28 years of age, approximately 5'10" tall, weighing about 150 lbs. with dark hair, medium cut. Appellant is actually 33 years old, 6'6" tall and weighs 220 lbs. with brown hair, a mustache and tattoos on his arms and hands. Gary Hill, a person who resided with appellant is approximately 5'10" tall, weighing about 150 lbs. with tattoos on his hands.

The state may withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officers in furtherance of the public interest in effective law enforcement. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). *State v. Tisnado*, 105 Ariz. 23, 458 P.2d 957 (1969). Rule 15.4(b)(2). R.Crim. Proc. 17 A.R.S. Where, however, the disclosure of an informant's identity is relevant and helpful to the defense or is essential to a fair determination of a cause, the privilege protecting the name of a confidential reliable informant must give way. *Roviaro v. U. S., supra*; *State v. Castro*, 13 Ariz.App. 240, 475 P.2d 725 (1970). Thus, it may be necessary to disclose an informant's name to show the defendant's innocence, or assure him of a fair trial. *State v. Benge*, 110 Ariz. 473, 520 P.2d 843 (1974).

An appellant seeking to overcome the state's policy of protecting an informant's identity, has the burden of proving that the informant is likely to have evidence bearing on the merits of the case. *State ex rel. Berger v. Superior Court*, 106 Ariz. 470, 478 P.2d 94 (1970). The appellant need not prove that the informer would give testimony favorable to the defense in order to compel disclosure of his identity; nor need he prove that the informer was a participant in or even an eye witness to the crime. His burden extends only to a showing that, in view of the evidence, the informer would be a material witness on the issue of guilt which might result in exoneration and that nondisclosure of his identity would deprive the defendant of a fair trial. *State v. Castro, supra.*

The appellant's sole defense was misidentification. It is clear from the record that the unidentified informant was a material witness who had very relevant information on the issue of guilt. The testimony of the state's witnesses placed him at the scene of the alleged crime just prior to the time it was committed. Appellant's cross-examination of Officer Click was not a substitute for the opportunity to examine the man who had set up the transaction, allegedly introduced the officer to the appellant, and was in the house when the transaction occurred. The informant could have identified the appellant as either the seller or an innocent party. Appellant demonstrated a reasonable possibility that the anonymous informant could give evidence on the issue of guilt which might result in his exoneration. *State v. Castro*, supra; and see *State v. Godwin*, 106 Ariz. 252, 475 P.2d 236 (1970).

We hold that the trial court erred in refusing to order the state to provide the name of the unidentified informer.

## II

### MOTION IN LIMINE

Appellant next contends that the trial court erred in denying appellant's motion in limine.

At the omnibus hearing on April 2, 1974, the trial court ordered a severance of the two counts for trial. At that hearing appellant made a motion in limine to preclude the admission of subsequent criminal activity. The court did not rule upon the motion at this time.

The subsequent bad acts related to and were the result of a search and seizure of the appellant's residence and his arrest two days after the incident alleged in Count I which resulted in the allegations of Count II. A motion to suppress all evidence relating to Count II was also made at the omnibus hearing and was granted on April 23, 1974, five days after the trial on Count I.

On April 19, the second day of trial on Count I, the trial court ruled:

"THE COURT: No sir. Court is going to deny the motion in limine. Court is going to at this point introduce the evidence for the limited purposes of identity and intent."

The court ruled that the subsequent bad acts were admissible but prohibited the state from using additional witnesses to present them. The court refused to preclude the prosecutor from impeaching the appellant with the subsequent bad acts.

■ The general rule is that evidence showing or tending to show the commission of another crime entirely distinct and independent of that for which a defendant is on trial is neither relevant nor admissible. *Dorsey v. State*, 25 Ariz. 139, 213 P. 1011 (1923). There are exceptions to this general rule. Evidence of another criminal act will be admitted if it directly establishes some essential element of the crime charged or has an independent relevancy for some purpose other than showing a probability that the accused committed the crime with which he is on trial merely because he is of criminal character. *State v. Ballesteros*, 100 Ariz. 262, 413 P.2d 739 (1966). Evidence of subsequent crimes cannot be used to establish knowledge in a prior instance. Intent, however, may properly be established by subsequent acts. *State v. Hays*, 17 Ariz.App. 202, 496 P.2d 628 (1972). However, where intent is not required to be specifically proved, or from the nature of the offense under investigation proof of the commission of the offense as charged necessarily establishes the

criminal intent, or the intent is a necessary conclusion from the act done, evidence of the perpetration of other like offenses should not be admitted. *Greve v. State*, 36 Ariz. 325, 285 P. 274 (1930). In *State v. Vallejos*, 89 Ariz. 76, 358 P.2d 178 (1960), this court held that proof of the acts of possession or sale are sufficient to show intent and therefore would exclude evidence of other crimes. Thus, in order that intent may be shown from a subsequent act or crime, it must be a fact in issue. There was no showing that the intent in this case was a fact in issue. Rather, the sole defense was that of misidentification.

■ The question now turns on whether the evidence of subsequent bad acts could properly have been admitted on the issue of identity. Where the identity of a defendant is the question in issue, subsequent acts or crimes may be shown if they are relevant. *State v. Chance*, 92 Ariz. 351, 377 P.2d 197 (1963); *State v. Francis*, 91 Ariz. 219, 371 P.2d 97 (1962). There was no such showing of relevance in this case.

In *Dorsey v. State*, we stated:

"The evidence of Smith was neither offered nor received to show motive, intent, absence of mistake or accident, or a common scheme or plan, but to identify appellant as one of the robbers of McAndrews, his defense being an alibi. It is not apparent, however, how proof of appellant's participation in the robbery of Smith on the 15th could identify him as the person who helped Hatton and Briley rob McAndrews on the 17th, or how it could tend to do so. They were separate, distinct, unconnected offenses committed two days apart, and there was nothing peculiar or novel in the method followed that would aid in pointing to him as one of the guilty parties in both instances." 25 Ariz. at 144, 213 P. at 1012, 1013.

The same reasoning holds true in the instant case. It is not apparent how proof of the appellant's participation in the al-

leged sale of narcotics on February 20th could identify him as the person who sold Officer Click narcotics on February 18th or how it could tend to do so. They were separate, distinct, unconnected offenses committed two days apart, and the subsequent act resulting in Count II involved an arrest by a different officer. There was nothing novel presented which would aid in identifying the defendant as the guilty party in both instances.

■ The state argues that this issue is moot on appeal because appellant did not testify, and no evidence of any subsequent crime was presented. We reject this argument. Defense counsel claims that the ruling of the trial court had a "chilling" effect on his decision to advise his client whether to take the stand or not. He further argues that it is this "chilling" effect which keeps the question from being moot. The record shows that this dilemma was brought to the attention of the trial court:

"MR. OSERAN: I want to indicate for the record that I feel because of your ruling I cannot put the defendant on the stand because he may be asked questions that would incriminate himself as to another pending charge before him and he would be denied his constitutional rights, or by using his constitutional rights would prejudice himself before the jury.

"And, therefore, I cannot call my defendant, and he has really lost his right.

\* \* \* \* \* \*

"THE COURT: However, my understanding was at the very beginning of the trial that you indicated that you were not bringing him for testimony.

"No, I don't doubt your rights to be an advocate, but I do think that it's - - - -

"MR. OSERAN: To set the record straight, it has always been my intention to put this defendant on the stand.

"Mr. Himelic is aware of that. If the court misunderstood me, I'm afraid that it may have been through fault of my communication or the court's understanding of what I was saying, but I intended to put him on the stand.

"And I feel I'm being precluded from putting him on the stand."

■ In criminal prosecutions, the accused has a right to testify in his own behalf. Ariz.Const. Art. 2, § 24, 1 A.R.S.; *State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973). The admission of the evidence of subsequent acts or crimes in Count II would have been so prejudicial as to completely destroy any possible probative value. *State v. Hays,* supra. The ruling of the trial court effectively precluded appellant from exercising his constitutional right to testify in his own behalf as to Count I for the reason he would be forced to exercise his right against self-incrimination as to Count II. We hold that the trial court erred in denying appellant's motion in limine and the fact that subsequent acts were never offered in evidence does not render the question moot on appeal.

### III

### ADMISSIONS

Appellant next assigns as error the admissions made by appellant to the officer:

"Q. All right. What occurred after you inspected the heroin—and inspected the heroin and these three papers and gave Mr. Tuell thirty dollars?

"A. I talked with Mr. Tuell a few minutes while I was waiting for the informant to return to the room.

"Q. All right. Do you recall what the —this conversation?

"A. Yes, I asked him if - - - -

"MR. OSERAN: I would object. Hearsay, unless this is some sort of an admission related to this charge.

"THE COURT: Overruled.

"THE WITNESS: I asked him if it would be possible for me to come back at a later time to buy more heroin and possibly a larger quantity.

"Q. (By Mr. Himelic) And do you recall his response?

"A. Yes, he said that I was welcome to come back any time, that he did deal in larger quantities and that he made regular trips to Nogales.

"MR. OSERAN: Your Honor, object, and ask that that be stricken, prejudicial and irrelevant to the charges against the defendant.

"THE COURT: Overruled.

"Q. (By Mr. Himelic) Could you continue, please?

"A. That he made regular trips to Nogales to purchase up to one to two ounces of heroin at a time to distribute.

"MR. OSERAN: Can I show a continuing objection?

"THE COURT: Yes, sir.

"Q. (By Mr. Himelic) Do you recall any more conversation at this time?

"A. That was about all of it."

It is well-established that in the prosecution of one accused of a crime, evidence of prior conduct which tends to show that the accused has or may have committed some other crime distinct from that for which he is now on trial is generally inadmissible. *State v. Schmid*, 107 Ariz. 191, 484 P.2d 187 (1971).

There are exceptions to this general rule which are competent to prove the specific crime charged where the evidence tends to establish: (1) motive, (2) intent, (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial. *State v. Schmid*, supra; *State v. Hardin*, 99 Ariz. 56, 406 P.2d 406 (1965). The admission of evidence concerning acts which constitute other separate offenses is preju-

dicial to the accused receiving a fair and impartial trial unless such acts are shown to come within these exceptions to the general rule. *State v. Hunt*, 91 Ariz. 145, 370 P.2d 640 (1962). No evidence was presented which would fall within the purview of any of these recognized exceptions to the general rule. The evidence should not have been admitted unless there were such similarities between the two offenses that there could be inferred an essential element necessary to sustain the conviction of sale of narcotics. See *State v. Akins*, 94 Ariz. 263, 383 P.2d 180 (1963). There is nothing in the record to prove that the narcotics allegedly imported by appellant on prior occasions were part of the quantity sold in the instant case or in any way related to the charge for which appellant was being tried. The admission of such evidence is irrelevant to the case at bar. See *State v. Little*, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120 (1960). The danger of admitting this type of evidence is that the jury may conclude the appellant is a "bad man" and convict on lesser evidence than might ordinarily be necessary to support a conviction. In addition, appellant is in danger of having to defend every incident of his entire lifetime in a single trial See *State v. Johnson*, 94 Ariz. 303, 383 P. 2d 862 (1963).

"It is prejudicial error to describe extra-judicial statements of the accused which do not constitute an admission of the offense charged, or an admission of a fact which will establish an element of the offense charged." *State v. Hunt*, supra, 91 Ariz. at 147, 148, 370 P.2d at 641.

On the basis of the foregoing we hold there was error in admitting this testimony.

IV

EXAMINATION OF WITNESS

Appellant next contends that the state cross-examined, impeached and reha-

bilitated its own witness during the direct examination of the witness. The testimony relates to a discrepancy between the description of the appellant in the police report as opposed to his physical appearance in the courtroom. The testimony was in the nature of an explanation, not an attack on the witness' credibility or truthfulness. We have reviewed the evidence and find that this contention is without merit.

V

DISCOVERY

Appellant urges that the trial court abused its discretion by permitting the state, in its case-in-chief, to call and examine a witness who had not been previously disclosed.

On cross-examination, defense counsel attempted to elicit information that Officer Click had mistaken the defendant for his roommate Gary Hill. The officer testified he had never seen Gary Hill although he had heard his name. The trial judge permitted the state to bring Gary Hill into the courtroom and Officer Click was unable to identify him. The court then permitted Officer Whitmore, who had not been previously disclosed, to identify Gary Hill. In doing so the court ruled:

"THE COURT: So that there's no question about it, I had indicated previously, Mr. Oseran, that normally I would permit this on rebuttal, but in as much [sic] as you've indicated the defendant is not going to testify, the court will permit this testimony at this time."

Appellant urges this ruling violated Rule 15.1, R.Crim.Proc. 17 A.R.S.

Rule 15.1 provides:

"a. Matters Relating to Guilt, Innocence or Punishment. No later than 10 days after the arraignment in Superior Court, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within his possession or control:

"(1) The names and addresses of all persons whom the prosecutor will call as witnesses in the case-in-chief together with their relevant written or recorded statements, * * *."

It is universally held that the trial judge must have some discretion in the order of the admissibility of evidence. *State v. Vallejos,* supra; *State v. Folk,* 78 Ariz. 205, 277 P.2d 1016 (1954); *State of Arizona v. Cruce,* 61 Ariz. 233, 147 P.2d 698 (1944); *James v. State of Arizona,* 53 Ariz. 42, 84 P.2d 1081 (1938). The intention of the rules of evidence is to enable one accused of a crime to prepare adequately and advisedly for his defense. The rules are not meant to provide an avenue of escape. The trial judge did not abuse his discretion in permitting rebuttal testimony while the state's case-in-chief was in progress when he was under the impression that the appellant was not going to present evidence. We cannot sustain appellant's claim that appellant's rights were prejudiced by the order of admission of evidence.

VI

CLOSING ARGUMENT

Appellant next urges the prosecutor's closing argument was improper and prejudicial. It is argued that statements by the prosecutor referring to the fact that appellant wore long sleeved shirts during the trial indicated that the appellant was a drug addict and wore the long sleeves to hide his needle tracks.

The prosecutor's final argument reads in pertinent part as follows:

"If you can recall the testimony about the photograph, he said he turned it over and looked for tattoos or indication of tattoos. And there were none on the back of that photograph. No indication that this defendant had tattoos. He was concerned about that.

"You recall at that time I called the jail to find out if this defendant had any tattoos. That was his testimony.

"You've had occasion to see the defendant the last two days. He's been sitting here. He obviously has a long-sleeved shirt on. He had a long-sleeved shirt on yesterday.

\* \* \* \* \* \*

"MR. HIMELIC: At this time, Your Honor, ladies and gentlemen of the jury, I simply ask you to consider and think about why Mr. Tuell is wearing a long-sleeved shirt today. He wore a long-sleeved shirt yesterday."

It is clear there was no inference either that the appellant was a narcotics user or that there were track marks on his arms. The comments obviously referred to shirt sleeves covering tatoos on appellant's arms. The prosecutor's argument was not improper, and the trial court did not err in refusing to grant a mistrial.

## VII

### JURY INSTRUCTIONS

Appellant complains that the court erred in refusing his requested instructions numbered 6, 8 and 10.

A requested instruction may be refused where matters dealt with in the refused instruction were adequately covered by other instructions given. *State v. Carrillo*, 108 Ariz. 524, 502 P.2d 1343 (1972); *State v. Riley*, 106 Ariz. 318, 475 P.2d 932 (1970); *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), cert. den. 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). The substance of the instructions was supplied by other instructions. There was no error in refusing the instructions. *Macias v. State*, 36 Ariz. 140, 283 P. 711 (1929).

Judgment reversed and remanded for a new trial.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.